CLAUDIA INGLE, Plaintiff-Appellant, v. HOSPITAL SISTERS HEALTH SYSTEM *et al.*, Defendants (David H. Binstadt *et al.* Respondents-Appellees).

Fourth District No. 4—85—0657

Opinion filed March 20, 1986.

M. John Hefner, Jr., of Harlan Heller, Ltd., of Mattoon, for appellant.

Richard Lott, of Lott & Surman, P.C., of Springfield, for appellees.

JUSTICE GREEN delivered the opinion of the court:

On June 8, 1984, plaintiff, Claudia Ingle, filed suit in the circuit court of Sangamon County against defendants, St. John's Hospital, Hospital Sisters Health System, and several of her treating physicians, alleging various counts of medical malpractice. In her complaint, she named Drs. David Binstadt, Michael Snyder, Erwin Janzen, Phillip Williams, and Robert Winders, as respondents-in-discovery under section 2—402 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—402.) On December 4, 1984, plaintiff filed a motion for leave to file an amended complaint naming Binstadt, Winders, Janzen, Williams, and Snyder as defendants. On December 5, 1984, the court allowed the motion as to Williams and Winders but denied it as to Binstadt, Janzen, and Snyder.

On January 7, 1985, plaintiff filed a motion requesting reconsideration of the December 5, 1984, ruling as it applied to the joinder of Binstadt and Snyder. On August 27, 1985, the trial court entered an order denying the January 7 motion and finding that there was no just reason to delay enforcement or appeal *of that order*. On Septem-

ber 10, 1985, plaintiff filed a notice of appeal purporting to appeal from the August 27 order denying reconsideration.

Section 2—402 of the Code of Civil Procedure permits plaintiffs in medical malpractice cases to name as respondents-in-discovery "those individuals, other than the named defendants, believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action." (Ill. Rev. Stat. 1983, ch. 110, par. 2—402.) Such respondents-in-discovery are subject to giving discovery to plaintiffs to the same extent as defendants to the suit. A respondent-in-discovery may, upon his or her motion, be made a defendant in the action. The plaintiff may require such a respondent to be named as a defendant upon motion made within six months after the respondent-in-discovery has been so designated and *upon a showing of probable cause of malpractice liability by such respondent.*

Plaintiff maintains that the depositions and affidavits before the court when it ruled on her December 4, 1984, motion made a sufficient showing of probable cause that she had a valid claim against Binstadt and Snyder and that the court erred in denying her motion to name them as parties defendant. Binstadt and Snyder contend that the evidence before the court justified the court's determination that probable cause was not shown. They also assert that we do not have jurisdiction of this appeal, because plaintiff's notice of appeal was not timely filed. No court of review of this State has passed on the question of the sufficiency of proof to require the trial court to find probable cause under section 2—402. However, we hold that the proof was sufficient here. We also find the notice of appeal to have been timely filed. Accordingly, we reverse.

■ We consider first the question of our jurisdiction. The thrust of the contention of Binstadt and Snyder that the notice of appeal was untimely is that plaintiff's motion to reconsider was filed on January 7, 1985, which was more than 30 days after the trial court's judgment of December 5, 1984, denying plaintiff's motion to designate them as defendants. The short answer to defendants' contention is that plaintiff does not need to rely upon the pendency of the motion for reconsideration to stay the time for filing notice of appeal. That was filed within 30 days from the time the judgment of December 5, 1984, became appealable, August 27, 1985.

We begin our analysis of the appealability issue by noting that plaintiff's notice of appeal purported to be from the August 27, 1985, order denying its motion to reconsider. Under the rule set forth in *Sears v. Sears* (1981), 85 Ill. 2d 253, 258, 422 N.E.2d 610, 612, an or-

der *denying* a post-judgment motion is not appealable. Rather, if *timely* filed, the pendency of the post-judgment motion does serve to extend the time for filing notice of appeal from the underlying judgment. However, as that court explained, the underlying judgment and the post-judgment order are closely related, and an appeal from the underlying judgment would carry with it the ruling denying the post-judgment motion. Accordingly, we hold that we may treat the notice of appeal as a notice of appeal of the underlying judgment of December 5, 1984.

 The December 5, 1984, judgment was final as to any claims plaintiff had against Binstadt and Snyder, but many other claims of plaintiff's against other parties remained pending. Accordingly, the appealability of that judgment was controlled by the terms of Supreme Court Rule 304(a) which provides that such a judgment is appealable only if a finding is made "that there is no just reason for delaying enforcement or appeal." (103 Ill. 2d R. 304(a).) Here, the court made no finding in that regard as to the December 5, 1984, judgment but made such a finding as to the denial of the motion for reconsideration. The difference is subtle and obscure. Considering the language of *Sears* and consistent with our ruling in regard to the notice of appeal failing to name the proper order as that which was appealed, we treat the Rule 304(a) finding as having been intended to cover the judgment of December 5, 1984.

 █ Supreme Court Rule 304(a) further states that when the finding of appealability is made, "[t]he time for filing the notice of appeal shall run from the entry of the required finding." (103 Ill. 2d R. 304(a).) Here, the judgment which was final as to some but not all parties was entered December 5, 1984, but that judgment did not become appealable until August 27, 1985, when the required finding was made. Notice of appeal was then filed on September 10, 1985, less than 30 days after the judgment became appealable.

Notably, Rule 304(a) further states that absent the finding making a judgment within its purview appealable, such a judgment "is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." (103 Ill. 2d R. 304(a).) Thus, when the motion to reconsider was filed on January 7, 1985, the trial court still had jurisdiction to entertain the motion. The pendency of such a motion may not have granted plaintiff any stay of time limit for filing notice of appeal, because the motion was not filed within 30 days of the judgment sought to be set aside as required by Supreme Court Rule 303 (103 Ill. 2d R. 303) for such a stay. (See *Wool v. La Salle National Bank* (1980), 89 Ill. App. 3d 560, 411 N.E.2d

1135.) Nevertheless, by the clear language of Rule 304(a), the trial court had jurisdiction to hear the motion and to rule on it on August 27, 1985. If the order denying that post-judgment motion is deemed the appropriate order from which to take appeal, notice of appeal from that order was filed within 30 days of its entry.

On the other hand, if we are correct in our determination that the denial of the post-judgment motion was not an appealable order but wrong in our determination to treat the notice of appeal and the Rule 304(a) finding as covering the December 5, 1984, judgment, the trial court has entered no appealable order, and the appeal must be dismissed and the case remanded. If that were done, the propriety of the denial of plaintiff's request to add the additional defendants would have to await either a proper 304(a) finding or the determination of all of the claims in the case.

With all of the foregoing considerations in mind, we deny the request of defendants that the appeal be dismissed.

We now turn to the merits of the appeal. Section 2—402 of the Code of Civil Procedure speaks in terms of respondents-in-discovery being joined as defendants "if the evidence discloses the existence of probable cause." (Ill. Rev. Stat. 1983, ch. 110, par. 2—402.) As we have indicated, no court of review of this State has passed on the question of what proof is necessary to show such "probable cause." However, in *Clark v. Brokaw Hospital* (1984), 126 Ill. App. 3d 779, 467 N.E.2d 652, this court explained:

> "The legislative history of section 2—402 indicates that its purpose was to provide plaintiff's attorneys with a means of filing medical malpractice suits without naming everyone in sight as a defendant. It was believed that the label of 'defendant' in a medical malpractice suit contributed to the spiraling cost of medical malpractice insurance. See transcript of proceedings, House of Representatives, June 10, 1976, at 32-33." (126 Ill. App. 3d 779, 783, 467 N.E.2d 652, 655.)

That legislative history is informative in determining the strength of proof that was intended to be necessary to make a showing of "probable cause" in section 2—402 proceedings.

The phrase "probable cause" has been defined in various ways in criminal and civil cases. It was most recently defined by the supreme court in a civil case in *Freides v. Sani-Mode Manufacturing Co.* (1965), 33 Ill. 2d 291, 211 N.E.2d 286. That case involved a tort action for malicious prosecution. The court stated:

> " 'Probable cause' has been defined in this usage [malicious prosecution] as 'such a state of facts, in the mind of the prose-

cutor, as would lead a man of ordinary caution and prudence to believe, or *entertain an honest and strong suspicion that the person arrested is guilty.' Harpham v. Whitney,* 77 Ill. 32." (Emphasis added.) 33 Ill. 2d 291, 295-96, 211 N.E.2d 286, 288-89.

■ The purpose of encouraging plaintiffs to name medical providers as respondents-in-discovery rather than defendants will not be served if a high degree of likelihood of success is necessary to be shown before such respondents can be named defendants. If that is required, plaintiffs will continue the practice of naming as defendants most those who have provided medical services to them at or about the time of the alleged injury. In the context of section 2—402, evidence sufficient to present a question of fact for the trier of fact need not be shown. Rather, only the general terms of the *Freides* definition need be met. That will occur upon a showing that the case against the respondent-in-discovery is such that "a man of ordinary caution and prudence" would "entertain an honest and strong suspicion" that the purported negligence of the respondent-in-discovery was a proximate cause of plaintiff's injury.

The plaintiff supported her motion to amend and add the various respondents as defendants with (1) the affidavit of Dr. John Keene, (2) discovery depositions of various respondents, and (3) X rays that had been interpreted by Binstadt and Snyder together with their reports to the treating physician. Plaintiff's motion for reconsideration was supported by the affidavit of Dr. Joseph Mallory. Defendants assert that the latter affidavit could not be properly considered in determining whether the trial court had previously erred in denying leave to add the additional defendants. We recognize possible merit in defendants' contention. As we find the matters which were presented to the trial court at the time it ruled on the motion to add defendants to have been sufficient to require a "probable cause" finding, we need not consider the Mallory affidavit.

The documents before the court at the time of the hearing on the motion to add respondents as parties defendant were clearly sufficient to show probable cause that (1) plaintiff, while pregnant, had been treated by some of the defendants for chest pain; (2) a venous catheter was inserted into her chest apparently to monitor blood flow or to provide a feeding tube; (3) at some time the catheter became misplaced, causing injury to plaintiff; and (4) Binstadt and Snyder together with other radiologists examined X rays of plaintiff showing the condition of the catheter and advised the attending physician of what the X rays showed. Plaintiff's alleged cause of action against

Binstadt and Snyder is based on their alleged failure to bring to the attention of the treating physician (1) the fact that the X-ray films showed the catheter to be in an unusual position, and (2) their inability to see the tip of the catheter in the film.

The evidence showed that Snyder had reviewed a June 8, 1982, X ray of plaintiff and had reported that he found "a normal, well positioned venous catheter." However, in his deposition, Snyder admitted that the X ray indicated the "possibility would exist" that the tip of the catheter was outside of an acceptable position, but he did not think it was. He mentioned that the X ray did not show any fluid outside the vein nor any hematoma that would indicate a hole in the vein.

Binstadt had viewed the June 8, 1982, X ray and reported that it showed "a normal, well positioned venous catheter." He then viewed an X ray taken June 10, 1982, and reported an opinion that the catheter was "negative and unchanged." In his deposition, Binstadt stated that it was difficult to see the tip of the catheter because both it and the bone were opaque. He admitted he could not see for sure where it was in either film, but he thought he knew where it probably was. He stated that if the treating physician were getting a normal blood return from the catheter, it would be in an acceptable position, but he admitted that he did not know whether a normal blood return was being received. Binstadt also testified that, as is obvious, the purpose of the radiologist's report concerning the X ray is to provide information on which the treating physician can rely.

Both Snyder and Binstadt stated in their depositions that they did not make any report to the treating physician that either X ray gave any indication that the catheter might be in an improper position.

Defendant Janzen, a radiologist, testified in his deposition that there was nothing in the foregoing X rays to indicate the catheter tip was improperly positioned. He admitted, however, that he could not see the tip of the catheter with precision, and his ability to see the tip was important in determining whether the catheter was in good position.

Keene's affidavit stated: (1) He was a specialist in emergency medicine and had reviewed hundreds of X-ray films including those taken to show the position of subclavian catheters; (2) he had viewed the X rays of plaintiff in question and the radiologists' reports accompanying them; and (3) he had an opinion within a reasonable degree of medical certainty that: (a) in the film of June 8, 1982, "the tip of the subclavian catheter is shown overlying the mediastinum considerably to the left of the usual position," and (b) in that film, the tip of the

catheter "might or could be gouging into the wall of the superior vena cava."

■■ In order to prove a case of negligence in treatment against a medical professional, the plaintiff must prove (1) the proper standard of care against which the professional's conduct must be measured; (2) a negligent failure to comply with the standard; and (3) that the injury for which suit is brought had as one of its proximate causes, the negligence of the professional. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279; *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301.) Here, the deposition testimony was sufficient to indicate that the standard against which the conduct of Binstadt and Snyder was to be judged was a requirement that they report to the treating physician anything about the X rays which would be significant in the treatment to be given. The totality of the matter before the court would also require a reasonable person to have at least "a strong and honest suspicion" that any failure on the part of these radiologists to properly advise the treating physician of significant matters concerning the X rays was a proximate cause of an ultimate injury suffered by plaintiff.

The difficult question is whether there was a strong enough showing that the radiologists negligently failed to give necessary information to the physician to require the court to have found that probable cause existed as to this issue. As indicated, we hold that such a showing was made. In his affidavit, Keene stated that in his opinion, the June 8, 1982, film, which both Binstadt and Snyder saw showed a subclavian catheter which was "considerably to the left of its usual position" and that the position was such that the tip "might or could be gouging into the wall of the superior vena cava." Both radiologists admitted that it was difficult to determine the position of the tip of the catheter. Janzen stated in his deposition that the tip was difficult to identify, and that the ability to see the tip was important in determining the position of the catheter. Neither radiologist mentioned anything in his reports about these uncertainties concerning the X rays. Binstadt attempted to indicate that failure to determine where the tip was would not be a significant problem if a normal blood flow were being obtained from the catheter, but he did not know whether this blood flow was being obtained. His report to the treating physician made no mention of this.

■■ We have no reason to believe that the legislature intended that the probable cause issue under section 2—402 was to be decided upon the basis of considerations that would be present in ruling on a motion for summary judgment for the respondents-in-discovery. Nor

do we believe that the plaintiff is required to show a *prima facie* case in order to require that respondents be made defendants. If such showing were required, the proof here would be insufficient to carry the day for plaintiff. Rather, the question is one of whether there exists an "honest and strong suspicion" that the respondents-in-discovery are liable. We recognize the deference that must be given to the trier of fact, but that determination goes not to the question of liability but as to the reasonableness of plaintiff's proceeding further against the respondents-in-discovery and subjecting them to the fact-finding process. Here, probable cause existed as a matter of law.

Accordingly, the judgment of the circuit court denying plaintiff leave to join respondents-in-discovery, Binstadt and Snyder, as defendants and to file an amended complaint as to them is reversed. The cause is remanded to the circuit court of Sangamon County with directions to allow the joining of these parties and the filing of the amended complaint.

Reversed and remanded with directions.

McCULLOUGH, P.J., and SPITZ, J., concur.