GLENDA P. RAWLES, Petitioner-Appellant, v. MORTON HARTMAN, Respondent-Appellee.

Second District   No. 2—87—1125

Opinion filed August 5, 1988.

Barbara Swanson Rominski, of Swanson & Rominski, of Waukegan, for appellant.

William G. Rosing, of Rosing, Applehans & Smith, Ltd., of Waukegan, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

By means of consolidated proceedings, petitioner sought to establish paternity and child support obligations pursuant to the Illinois Parentage Act of 1984 (the Parentage Act) (Ill. Rev. Stat. 1985, ch. 40, par. 2501 *et seq.*). The trial court entered an agreed order on March 27, 1987, in which Morton Hartman, the respondent, stipu-

lated that he was the father of the minor child, Debra G. Rawles, born May 5, 1969. The order required respondent to pay child support in the amount of $400 per month from January 1987 through June 1987 and $600 in July 1987. On October 2, 1987, Glenda Rawles filed a petition requesting that Hartman pay Debra's college expenses. At the hearing on October 23, 1987, respondent argued that the petition for college expenses should be dismissed because the Parentage Act makes no specific provision for such expenses. The trial court agreed with respondent and dismissed the petition on October 23, 1987. Petitioner appeals from this order. We reverse and remand.

This appeal challenges the decision of the trial court in refusing to apply section 513 of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (Ill. Rev. Stat. 1985, ch. 40, par. 513) to a proceeding brought pursuant to the Parentage Act, wherein petitioner sought contribution for the educational expenses of a nonminor, illegitimate child.

▇ Section 513 of the Dissolution Act, in essence, provides that the court may award sums of money for the education and maintenance of a nonminor child of divorced parents before or after the child reaches the age of majority. Petitioner argues that the failure to apply section 513 to provide for the educational needs of a nonminor, illegitimate child is error and that this arbitrary differentiation between legitimate and illegitimate children results in a violation of the equal protection clauses of the Federal and State Constitutions. U.S. Const., amend. XIV, §1; Ill. Const. 1970, art. I, §2.

We agree with petitioner's contention that section 513 of the Dissolution Act is applicable to a proceeding brought under the Parentage Act and that a court may provide for the education and maintenance of a nonminor, illegitimate child, as equity requires. To conclude otherwise would raise serious questions regarding the constitutionality of the overall statutory scheme intended to provide equally for the support of legitimate and illegitimate children.

■ In Illinois, the traditional rule is that a parent's obligation to support a child terminates at the child's majority except for educational expenses. *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 638.

Courts, applying their inherent powers of equity, have also established the duty of (divorced) parents to provide for the education of their children beyond the age of majority in appropriate circumstances. (See *Maitzen v. Maitzen* (1959), 24 Ill. App. 2d 32, 40.) Section 513 of the Dissolution Act is a codification of these judicially de-

veloped rules. See Ill. Ann. Stat., ch. 40, par. 513, Historical and Practice Notes, at 788 (Smith-Hurd 1980).

■ The judicially developed rules codified in section 513 of the Dissolution Act permit a court to "make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property and income of either or both of its parents as equity may require, whether application is made therefore before or after such child has, or children have, attained majority age." (Ill. Rev. Stat. 1985, ch. 40, par. 513.) In making such awards, the court is required to consider all relevant factors which appear reasonable and necessary, including the financial resources of both parents, the standard of living the child would have enjoyed had the marriage not been dissolved, and the financial resources of the child. Ill. Rev. Stat. 1985, ch. 40, par. 513.

■ At common law, the father of an illegitimate child had no duty to provide support; the remedy is purely statutory and is to be enforced in the manner prescribed by statute. (*Ehorn v. Podraza* (1977), 51 Ill. App. 3d 816, 817.) In addition to determining parentage, the purposes of a paternity suit are to provide support for the child born out of wedlock and to prevent the child from becoming a public charge. *In re Petition of Sullivan* (1985), 134 Ill. App. 3d 455, 460.

■ Our legislature long ago established the principle that the parent of a child born out of wedlock whose paternity is established is liable for the child's support, maintenance, education, and welfare to the same extent and in the same manner as the parent of a child born in lawful wedlock. (See *Wallace v. Wallace* (1965), 60 Ill. App. 2d 300, 302; see also Ill. Rev. Stat. 1959, ch. 106¾, par. 52.) More recently, this principle was reaffirmed in section 3 of the Parentage Act, which states unequivocally that "[t]he parent and child relationship, including support obligations, extends equally to every child and to every parent, regardless of the marital status of the parents." Ill. Rev. Stat. 1985, ch. 40, par. 2503.

In appropriate circumstances, the legislature and the courts have applied certain provisions of the Parentage Act in conjunction with relevant provisions of the Dissolution Act. For example, section 14(a) of the Parentage Act provides:

"The judgment shall contain or explicitly reserve provisions concerning any duty and amount of child support and may contain provisions concerning the custody and guardianship of the child, *** which the court shall determine in accordance with the relevant factors set forth in the 'Illinois Marriage and Dis-

solution of Marriage Act' *** and any other applicable law of Illinois, to guide the court in a finding in the best interests of the child. Specifically, in determining the amount of any child support award, the court shall use the guidelines and standards set forth in subsection (a) of Section 505 of the Illinois Marriage and Dissolution of Marriage Act ***." (Ill. Rev. Stat. 1985, ch. 40, par. 2514(a).)

Similarly, section 14(b) of the Parentage Act provides that the court may order certain child support payments to be made considering "all relevant facts, including the factors for determining the amount of support specified in the 'Illinois Marriage and Dissolution of Marriage Act' *** and other equitable factors ***." (Ill. Rev. Stat. 1985, ch. 40, par. 2514(b).) A similar relationship between the two acts is established in the enforcement provisions of section 15(b) and the modification of judgment provisions of section 16 of the Parentage Act. (Ill. Rev. Stat. 1985, ch. 40, pars. 2515(b), 2516.) These provisions indicate the legislature's intent to apply relevant provisions of the Dissolution Act to matters of child support arising out of parentage proceedings.

Our courts have also applied relevant provisions of the Dissolution Act to determine the appropriate amount of child support in a proceeding under the Parentage Act. In *People ex rel. Spicer v. Coleman* (1979), 72 Ill. App. 3d 631, 637, although the Paternity Act then in force had not specified the standard of proof required for an increase in child support, the court found that the applicable standard was the same as that used in section 510(a) of the Dissolution Act, that is, a showing of a substantial change in circumstances. Ill. Rev. Stat. 1977, ch. 40, par. 510(a); see also *Fink v. Roller* (1983), 113 Ill. App. 3d 1084, 1087.

■ A basic rule of statutory construction is that parts of a comprehensive statutory scheme should be read *in pari materia* in order to ascertain the legislature's intent and to avoid injustice. Statutory provisions related to the same subject matter should be construed harmoniously where possible. *In re Petition of Sullivan* (1985), 134 Ill. App. 3d 455, 460.

■ Section 14(a) of the Parentage Act requires that a court determine the duty and amount of child support based on the same guidelines, standards, and relevant factors used in a dissolution proceeding. We believe that its specific reference to section 505(a) of the Dissolution Act is merely a point of departure for the court to determine the amount of support of a child, including one born out of wedlock. The guidelines in section 505(a) merely provide a place to

begin the analysis, which should be based on all relevant factors dictated by Illinois law. (*In re Marriage of Blaisdell* (1986), 142 Ill. App. 3d 1034, 1040.) The guidelines in section 505(a) establish a minimum level of support, not a maximum. *In re Marriage of McBride* (1988), 166 Ill. App. 3d 504, 510.

We disagree with the respondent's contention that the inclusion of section 505(a) of the Dissolution Act in section 14(a) of the Parentage Act requires a court to determine child support only according to section 505(a). Indeed, section 505(a) specifically permits a court to deviate from the guidelines and to consider all relevant factors, including the educational needs of the child. Additionally, section 14 also directs a court to consider "any other applicable law of Illinois, to guide the court in a finding in the best interests of the child." Ill. Rev. Stat. 1985, ch. 40, par. 2514(a).

When read together, the two acts establish that the court has broad discretion to determine any award of child support, including support for educational expenses beyond the age of majority despite the absence of a specific provision for the education of nonminor, illegitimate children. Where two acts *in pari materia* are construed together and one of them contains provisions omitted from the other, the omitted provision will be applied in a proceeding under the act not containing such provisions, where not inconsistent with the purpose of the act. *In re Marriage of Pick* (1983), 119 Ill. App. 3d 1061, 1067.

As noted above, the purposes of the Parentage Act are to provide for the support of the child and to prevent the child from becoming a public charge. We conclude that it is consistent with those purposes for a court, in a parentage proceeding, to apply section 513 of the Dissolution Act so as to provide for the education of a nonminor, illegitimate child as equity requires. This will effectuate the legislative intent to treat all children equally in matters of support, such intent being manifested in section 3 of the Parentage Act (Ill. Rev. Stat. 1985, ch. 40, par. 2503).

■ Petitioner alternatively argues that the statutory scheme is unconstitutional because it discriminates against illegitimate children in not specifically providing for their post-majority educational expenses. It is our duty to construe acts of the legislature so as to affirm their constitutionality and validity, if it can be reasonably done. If their construction is doubtful, the doubt will be decided in favor of the law challenged. *People v. Sturlic* (1985), 130 Ill. App. 3d 120, 127.

■ The State may not invidiously discriminate against illegiti-

mate children by denying them substantial benefits accorded legitimate children; once the State posits a judicially enforceable right on behalf of children to needed support from their natural fathers, there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married his or her mother. For a State to do so is illogical and unjust. *Gomez v. Perez* (1973), 409 U.S. 535, 539, 35 L. Ed. 2d 56, 60, 93 S. Ct. 872, 875.

Consistent with *Gomez*, our construction of the Illinois statutory scheme effectuates the legislature's intent to provide equal treatment to legitimate and illegitimate children in matters of support. Therefore, we need not address the equal protection arguments advanced by the petitioner. We note, however, that the courts of other jurisdictions have also held that the illegitimate child has a right of support equal to that of a legitimate child of divorced parents. (See, *e.g.*, *In re Kary* (N.D. 1985), 376 N.W.2d 320; *State of South Dakota ex. rel. Wieber v. Hennings* (S.D. 1981), 311 N.W.2d 41; *In re Paternity of B.W.S.* (Wis. App. 1985), 125 Wis. 2d 212, 371 N.W.2d 379, *aff'd* (1986), 131 Wis. 2d 301, 388 N.W.2d 615.) One court has specifically held that an illegitimate child has the same right to support after the age of 18 as that of a child of divorced parents. *Doe v. Roe* (1987), 23 Mass. App. Ct. 590, 504 N.E.2d 659.

Having concluded that, in appropriate circumstances, a court may equitably apply section 513 of the Dissolution Act to award expenses for the education of a nonminor, illegitimate child, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

LINDBERG, P.J., and UNVERZAGT, J., concur.