ROBERT LOUIS MOSCARDINI *et al.*, Plaintiffs-Appellants, v. NEURO-SURG, S.C., *et al.*, Defendants (William Hadesman and Michael Nosek, Respondents-in-Discovery-Appellees).

Second District    No. 2—93—1021

Opinion filed December 28, 1994.—Rehearing denied February 24, 1995.

Robert A. Clifford and Robert P. Sheridan, both of Corboy, Demetrio & Clifford, and Phillip A. Taxman, both of Chicago, for appellants.

Sandra E. Kupelian, of Cassiday, Schade & Gloor, and Lynn D. Dowd, of Levin, McParland, Phillips, Leydig & Haberkorn, both of Chicago, and

Timothy J. Ashe and Richard A. Barrett, Jr., both of Cassiday, Schade & Gloor, of Wheaton, for appellee Michael Nosek.

James T. Ferrini and Edward M. Kay, both of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellee William Hadesman.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, Robert and Geri Moscardini, appeal an order denying their motion to file an amended complaint naming respondents-in-discovery William Hadesman, M.D., and Michael Nosek, M.D., as defendants in their medical malpractice lawsuit. The original complaint designated Neurosurg, S.C., and Denes Martonffy, M.D., as defendants, and Drs. Hadesman and Nosek as respondents-in-discovery pursuant to section 2—402 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—402 (West 1992)).

The following summary of the facts is taken from plaintiffs' complaint and the depositions of Drs. Hadesman and Nosek (respondents). On February 11, 1991, plaintiff Robert Moscardini (plaintiff) was admitted to Elmhurst Memorial Hospital (Elmhurst) under the service of Dr. Nosek. At the time of his admission, plaintiff was complaining of back and bilateral leg pain. During the afternoon of February 13, 1991, plaintiff had an epidural injection performed for relief of pain and an MRI for evaluation of his lumbar spine. That evening, around 9:45 p.m., plaintiff alleges his condition was deteriorating. He was having difficulty urinating, was dribbling urine, and had numbness in both legs from the knees to the feet. The next day, February 14, 1991, plaintiff underwent surgery at Elmhurst for removal of a herniated L3-L4 invertebral lumbar disc. The surgery was performed by Dr. Martonffy, assisted by Dr. Hadesman. Following surgery, plaintiff experienced loss of bowel and bladder function which persisted to the end of his hospitalization on March 5, 1991.

The depositions of Drs. Hadesman and Nosek confirm the roles they played in plaintiff's treatment. Dr. Hadesman stated in his deposition that plaintiff was admitted to Elmhurst on the service of Dr. Nosek with himself as consultant. According to Dr. Hadesman, Dr. Nosek was responsible for plaintiff's general care, while Dr. Martonffy (who was originally named as a defendant), Dr. Hadesman, and another doctor were specifically responsible for the treatment of plaintiff's back pain. Dr. Nosek's deposition confirmed that he was plaintiff's attending doctor and that Dr. Hadesman was responsible for the treatment of plaintiff's back pain.

The instant lawsuit was filed on October 21, 1992. It alleged that Dr. Martonffy's diagnosis, treatment, and post-operative follow-up

were deficient in a number of respects and sought damages for injuries plaintiff allegedly suffered as a result of this negligence. On April 13, 1993, plaintiff took the depositions of Drs. Hadesman and Nosek. On April 20, 1993, plaintiff filed a motion to convert the respondents-in-discovery to defendants. The motion alleged that, based on the contents of respondents' depositions and the opinions of two qualified medical experts who had conducted a review of the deposition transcripts, there was probable cause to convert them to defendants. Attached to the motion as exhibits were two letters, purporting to be written by physicians, setting forth the opinion that respondents had committed acts of professional negligence in treating plaintiff. Neither of these letters was signed, sworn, or dated.

The first letter concerned Dr. Hadesman. It stated that the author, a board-certified internist and neurosurgeon, was of the opinion that Dr. Hadesman had been negligent in failing properly to diagnose plaintiff's condition and in failing to take plaintiff to surgery earlier. The letter opined that Dr. Hadesman's negligence caused plaintiff's neurological condition to deteriorate to the extent it did.

The second letter also stated it was written by a board-certified internist and neurosurgeon, and concerned Dr. Nosek. It stated that Dr. Nosek was plaintiff's attending physician and was in primary control of the consultants and total patient care. The letter expressed the opinion that Dr. Nosek negligently failed to monitor plaintiff's neurological and urological status, failed to come to the hospital when informed of plaintiff's worsening condition, failed to notify Drs. Martonffy and Hadesman of plaintiff's deteriorating condition, and failed to understand the significance of the changes in plaintiff's neurological and urological status.

Respondents objected to plaintiff's motion to name them as defendants, arguing that it was insufficient under section 2—402 of the Code because it did not set forth any competent evidence which showed probable cause to convert respondents-in-discovery to defendants. Specifically, respondents argued that because the attached letters were unsigned, unsworn, and undated, they could not constitute evidence as contemplated by section 2—402. Respondents further noted that plaintiff had filed no other evidence in support of his motion. In response, plaintiff sought, and was granted, leave to file with the court the deposition transcripts of Drs. Hadesman and Nosek. Plaintiff argued that the physicians' letters, read in conjunction with respondents' depositions, were sufficient evidence to support conversion of respondents to defendants.

On May 6, 1993, following a hearing, the trial court denied plaintiff's motion to amend the complaint to name respondents as

defendants and dismissed respondents with prejudice. In reaching its decision, the trial court found that "the unverified letters presented by Plaintiff cannot be considered by the Court as evidence," apparently relying on *Froehlich v. Sheehan* (1992), 240 Ill. App. 3d 93. The court, however, did consider the deposition testimony of respondents, but found that the depositions, without more, did not give rise to probable cause to convert respondents to defendants.

On June 4, 1993, plaintiff filed a motion to reconsider, to which he attached signed and dated copies of the same letters, along with the authors' *curricula vitae*. Also attached was an affidavit of plaintiff's attorney, stating that he had consulted with the physicians who had written the letters, that they practice in the same specialty as respondents, and that he reasonably believed them to be knowledgeable as to the issues involved. The affidavit further stated: "[t]he reviewing health professionals have determined in their written reports after review of the medical records and other relevant material involved *** that there is a reasonable and meritorious cause for the filing of such an action." Respondents opposed the motion to reconsider, contending that the submission of the signed and dated letters did not alter the state of the evidence before the court because the letters remained unsworn and, thus, could not be considered. On July 29, 1993, after briefing, the trial court denied the motion to reconsider, and this timely appeal ensued.

On appeal, plaintiff's principal contention is that the trial court erred in denying him leave to amend his complaint because he produced sufficient evidence to create probable cause to convert respondents to defendants. Respondents argue that the only evidence properly before the trial court was the depositions because the physicians' letters were unsworn and, hence, not evidence. Because the trial court ruled as a matter of law that unverified letters could not constitute evidence under section 2—402, we review its determination *de novo*. See *S.B. Lexington, Inc. v. Near North Insurance Agency, Inc.* (1993), 244 Ill. App. 3d 1023, 1030; *Jacobson v. General Finance Corp.* (1992), 227 Ill. App. 3d 1089, 1093 (holding that where question involves statutory interpretation, it is reviewed as a matter of law).

The critical issue on appeal is whether a court may consider an unverified letter from a physician as evidence in determining whether there is probable cause to convert a respondent-in-discovery to a defendant, where the plaintiff's attorney has submitted an affidavit attesting to the genuineness of the letter. Section 2—402 provides in pertinent part:

"§ 2—402. Respondents in discovery. The plaintiff in any civil action may designate as respondents in discovery in his or her

pleading those individuals or other entities, other than the named defendants, believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action.

Persons or entities so named as respondents in discovery shall be required to respond to discovery by the plaintiff in the same manner as are defendants and may, on motion of the plaintiff, be added as defendants if the evidence discloses the existence of probable cause for such action." 735 ILCS 5/2—402 (West 1992).

Plaintiff argues that section 2—402 is part of a larger statutory scheme governing medical malpractice actions and should, therefore, be read *in pari materia* with section 2—622 of the Code (735 ILCS 5/2—622 (West 1992)). Section 2—622 expressly allows plaintiffs to demonstrate the meritoriousness of their medical malpractice case by submitting an unsigned, unsworn report from a qualified health professional, provided it is accompanied by an affidavit from the plaintiff's attorney attesting to the report's genuineness. (735 ILCS 5/2—622(a)(1) (West 1992).) Respondents contend that the trial court properly declined to consider the letters because only sworn opinions from health professionals should be allowed as evidence under section 2—402. They further argue that section 2—402's probable cause requirement is unique and should not be construed in light of section 2—622.

In determining whether unsigned letters may be considered evidence under section 2—402, we are mindful of the fundamental principle of statutory construction, that courts are to give effect to the intent of the legislature. (*In re Illinois Bell Switching Station Litigation* (1994), 161 Ill. 2d 233, 246; *Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 51.) The first step in determining legislative intent is to look at the plain meaning of the statutory language. (*Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 283; *Williams*, 139 Ill. 2d at 51.) Where, however, the legislature's intent is not clear from the face of the statute, or the language is susceptible to more than one interpretation, it is proper to look elsewhere for legislative intent. (*Williams*, 139 Ill. 2d at 51.) In construing a statutory provision which is subject to more than one reasonable interpretation, it is often helpful to look to similar statutes for guidance. (*Costello v. Governing Board of Lee County Special Education Association* (1993), 252 Ill. App. 3d 547, 557.) Statutes which are part of a comprehensive scheme and relate to the same subject matter may be considered *in pari materia* and may be relied upon for guidance. (*People ex rel. Daley v. Datacom Systems Corp.* (1992), 146 Ill. 2d 1, 17-18; *Di Falco v. Board of Trustees of*

*Firemen's Pension Fund* (1988), 122 Ill. 2d 22, 27; *Mister v. A.R.K. Partnership* (1990), 197 Ill. App. 3d 105, 113.) Because *in pari materia* statutes are governed by the same spirit, they should be read consistently to avoid injustice. *Rawles v. Hartman* (1988), 172 Ill. App. 3d 931, 935; *In re Petition of Sullivan* (1985), 134 Ill. App. 3d 455, 460.

We find that "evidence," as used in section 2—402, is susceptible of more than one meaning and is, therefore, ambiguous. Contrary to respondents' assertion, the term "evidence" is not self-defining and can have different meanings depending on the context in which it is used. For example, what a court may consider as evidence differs depending on whether the context is that of a trial, where the rules of evidence strictly apply, or that of a probable cause hearing, where evidentiary standards are relaxed. (See *People v. Johnson* (1989), 187 Ill. App. 3d 756, 771.) Courts have traditionally allowed hearsay to be considered in the context of probable cause determinations, while it is generally inadmissible at trial. (See *People v. Tisler* (1984), 103 Ill. 2d 226, 237; *People v. Earley* (1991), 212 Ill. App. 3d 457, 465.) Looking to the language of section 2—402, we cannot say that it commands any particular construction of "evidence." A broad construction, which would include unverified physicians' letters, would be as reasonable as a narrow one. Since the language of the statute does not manifest the one true construction of the term "evidence," we look to the statute's language, its purpose, and statutes which relate to similar subject matter.

In interpreting the term "evidence" as used in section 2—402, we find an examination of section 2—622 of the Code (735 ILCS 5/2—622 (West 1992)) to be helpful. That section requires the plaintiff in any medical malpractice action to attach to the complaint an affidavit stating that he has consulted with a health professional, in whose opinion there is a reasonable and meritorious cause for filing the action. (735 ILCS 5/2—622(a) (West 1992).) In addition, the plaintiff must attach the health professional's written report indicating the basis for this determination. However, under section 2—622, "information which would identify the reviewing health professional may be deleted" from the copy of the written report submitted to the court. 735 ILCS 5/2—622(a)(1) (West 1992).

An examination of the purposes behind sections 2—402 and 2—622 reveals important similarities. Section 2—622 was enacted to eliminate frivolous medical malpractice lawsuits at the pleadings stage and to ensure that those lawsuits which are filed are meritorious. (84th Ill. Gen. Assem., House Proceedings, May 23, 1985, at 406 (Representative Hawkinson); *Peterson v. Hinsdale Hospital* (1992), 233 Ill. App. 3d 327, 329; *Comfort v. Wheaton Family Practice* (1992),

229 Ill. App. 3d 828, 832; *Lyon v. Hasbro Industries, Inc.* (1987), 156 Ill. App. 3d 649, 655.) Section 2—622, however, was not intended "to burden the plaintiff with insurmountable hurdles prior to filing." (*Comfort,* 229 Ill. App. 3d at 832.) It is a technical pleading requirement intended to deter frivolous lawsuits, not a substantive defense. *Thompson v. Heydemann* (1992), 231 Ill. App. 3d 578, 582.

Similarly, section 2—402 (735 ILCS 5/2—402 (West 1992)), though it applies to all civil actions, was enacted to ensure that medical malpractice litigation does not become overly burdensome to potential defendants, while allowing plaintiffs to obtain relevant information from those who possess it. (See *Clark v. Brokaw Hospital* (1984), 126 Ill. App. 3d 779, 783.) In *Clark,* the court stated:

"The legislative history of section 2—402 indicates that its purpose was to provide plaintiff's attorneys with a means of filing medical malpractice suits without naming everyone in sight as a defendant. It was believed that the label of 'defendant' in a medical malpractice suit contributed to the spiraling cost of medical malpractice insurance." *Clark,* 126 Ill. App. 3d at 783.

Additionally, the burdens placed on plaintiffs by the two statutes are similar. Under section 2—622, the standard of proof a plaintiff must meet is that of a "reasonable and meritorious cause for the filing." (735 ILCS 5/2—622(a)(1) (West 1992).) Section 2—622 is to be liberally construed and should not be used to deprive a plaintiff of a trial on the merits of a medical malpractice claim. (*Leask v. Hinrichs* (1992), 232 Ill. App. 3d 332, 339; *Thompson,* 231 Ill. App. 3d at 582.) A medical report under section 2—622 is sufficient where it "sets forth the medical records reviewed by the author and states which actions he or she felt were inappropriate or unnecessary [and] concludes by stating in his or her opinion which defendants were negligent and why." (*Neuman v. Burstein* (1992), 230 Ill. App. 3d 33, 39.) Further, section 2—622 expressly allows reasonable and meritorious cause to be shown by submitting unsigned reports from a health professional, provided that the plaintiff's attorney files an affidavit declaring he has consulted and reviewed the facts of the case with the health professional, who has determined there is a reasonable and meritorious cause for filing the lawsuit. 735 ILCS 5/2—622(a)(1) (West 1992).

Section 2—402 allows plaintiffs to add respondents-in-discovery as defendants in a lawsuit where "the evidence discloses the existence of probable cause for such action." (735 ILCS 5/2—402 (West 1992).) Courts have consistently held that the burden of proof necessary to show probable cause under section 2—402 is not a high one. (See, *e.g., Ingle v. Hospital Sisters Health System* (1986), 141 Ill. App. 3d 1057.) In *Ingle,* the court stated: "[t]he purpose of encouraging

plaintiffs to name medical providers as respondents-in-discovery rather than defendants will not be served if a high degree of likelihood of success is necessary to be shown before such respondents can be named defendants." (*Ingle*, 141 Ill. App. 3d at 1062.) *Ingle* held that respondents-in-discovery may be converted to defendants upon a showing "that the case against the respondent-in-discovery is such that 'a man of ordinary caution and prudence' would 'entertain an honest and strong suspicion' that the purported negligence of the respondent-in-discovery was a proximate cause of plaintiff's injury." (*Ingle*, 141 Ill. App. 3d at 1062.) Section 2—402, however, is silent as to what courts may consider as evidence in making the probable cause determination.

Plaintiff contends, and we agree, that sections 2—402 and 2—622 were enacted for similar purposes. Both seek to maintain a balance between the right of an aggrieved plaintiff to bring a medical malpractice action and the right of physicians and other health professionals to be free from the burden of defending groundless suits. Section 2—402's probable cause requirement is intended to ensure that when a plaintiff attempts to convert a respondent in discovery to a defendant, he has meritorious reasons for doing so. The same spirit governs section 2—622, which seeks to ensure that only meritorious medical malpractice lawsuits are filed. Thus, we conclude that sections 2—402 and 2—622 are governed by similar policies and are capable of being read *in pari materia*. See *Costello*, 252 Ill. App. 3d at 557; *Rawles*, 172 Ill. App. 3d at 935.

Given the similarity in the goals of the two provisions, it is virtually inconceivable that the legislature intended the term "evidence" used in section 2—402 to require a signed, verified report, whereas an unsigned, unverified report, combined with an attorney's affidavit, suffices under section 2—622. By enacting section 2—622 as it did, the legislature concluded that an unsigned letter from a health professional, combined with an attorney's affidavit, was sufficient to ensure the meritoriousness of a medical malpractice claim. There is no reason to believe that a similar letter and affidavit, based on the information obtained during the statutory discovery period, could not be sufficient to satisfy the probable cause requirement of section 2—402.

There is nothing on the face of either of the letters submitted by plaintiff in the present case which would render them inherently incredible, and respondents have not alleged that they were procured through fraud. In fact, the attorney's affidavit affirms that the authors of the letters were consulted and that the opinions expressed are genuine. The trial court never implied that plaintiff's claim

against Drs. Hadesman and Nosek was frivolous, brought in bad faith, or with an intent to frustrate justice. In view of these facts, to rule that the letters, in conjunction with the deposition transcripts and the affidavit of plaintiff's attorney, could not be considered by the trial court in making its probable cause determination under section 2—402 would elevate form over substance and create an injustice inconsistent with the legislature's intent in passing sections 2—402 and 2—622.

*Froehlich v. Sheehan* (1992), 240 Ill. App. 3d 93, relied upon by respondents, does not require a different result. *Froehlich* involved an appeal by a plaintiff who sought leave to file an amended complaint converting certain respondents-in-discovery to defendants in a medical malpractice lawsuit. The motion had been placed on the "routine motion call" in the circuit court of Cook County and had, accordingly, been granted by the court without a hearing. The only material submitted in support of the motion was an unsigned, undated, unverified letter, purportedly written by a physician, which stated that the respondents-in-discovery had been negligent. No deposition transcripts or other evidence accompanied the motion. The respondents moved to vacate the order granting the motion, arguing that the plaintiff had failed to comply with the requirements of section 2—402 of the Code. The trial court granted the motion, and the appellate court affirmed. *Froehlich*, 240 Ill. App. 3d at 95.

On appeal, the plaintiff contended that the respondents had waived their right to an evidentiary hearing on the propriety of converting them to defendants under section 2—402 by failing to request a hearing at the time the plaintiff's motion was filed. The appellate court disagreed and held that under *Browning v. Jackson Park Hospital* (1987), 163 Ill. App. 3d 543, "section 2—402 requires plaintiffs to present evidence to the court to justify granting leave to amend a complaint to convert respondents in discovery to defendants." (*Froehlich*, 240 Ill. App. 3d at 101.) *Froehlich* went on to note that placing the motion on the routine motion call, where it would be decided without the presentation of evidence, was contrary to the requirements of section 2—402. (*Froehlich*, 240 Ill. App. 3d at 101.) *Froehlich* held that, under the plain meaning of section 2—402, a court cannot grant a motion to convert respondents-in-discovery to defendants without making an evidentiary determination as to probable cause. (*Froehlich*, 240 Ill. App. 3d at 102.) Finally, *Froehlich* concluded that the appropriate remedy when a plaintiff has improperly placed a 2—402 motion on the routine motion call was to consider the motion as originally presented, rather than to give the plaintiff the opportunity to augment its motion with additional supporting documentation. *Froehlich*, 240 Ill. App. 3d at 102.

*Froehlich* went on to state, in *dictum*, that even if the court were to hold otherwise and allow plaintiff a "second bite of the apple," the result would be the same because plaintiff failed, as a matter of law, to meet his evidentiary burden. (*Froehlich*, 240 Ill. App. 3d at 102.) The court noted that a trial court may grant a motion to convert a respondent-in-discovery to a defendant "only if a plaintiff presents evidence that would engender, in an ordinarily cautious and prudent person, an honest and strong suspicion that the respondent's alleged breach of the applicable standard of care was the factual and legal cause of the plaintiff's injury." (*Froehlich*, 240 Ill. App. 3d at 102.) The court continued:

> "Unlike the plaintiff in *Ingle* [*Ingle v. Sisters Health System* (1986), 141 Ill. App. 3d 1057], *** plaintiff here presented no affidavits, no X rays, no reports by the respondents, nor any evidence other than the internist's letter, which is unsworn, unsigned, and undated. Thus, the letter is not evidence, much less the type of evidence that would create in an ordinarily cautious and prudent person an honest and strong suspicion that the Sheehan defendants' negligence caused Edwards' injuries." *Froehlich*, 240 Ill. App. 3d at 102-03.

*Froehlich* is distinguishable from the present case. In the case at bar, unlike in *Froehlich*, plaintiff presented deposition testimony from the respondents-in-discovery describing plaintiff's symptoms, stating what treatments they pursued and showing what role each played in plaintiff's treatment. The physicians who wrote the letters opining that respondents had been negligent based their opinions on these depositions. Further, unlike *Froehlich*, plaintiff submitted an affidavit from his attorney confirming that he had consulted with the letters' authors and that the opinions expressed were genuine. In *Froehlich*, there was apparently no attorney's affidavit and no reports or depositions from the respondents-in-discovery to corroborate the physician's letter. By contrast, in the present case, the genuineness of the letters is affirmed by the affidavit of plaintiff's attorney. Further, the factual assertions contained in the letters can be corroborated by respondents' depositions. Thus, the degree of reliability associated with the physicians' letters produced by plaintiff in the case at bar is significantly greater than in *Froehlich*, and that court's rationale for holding that the letter before it was not evidence is inapplicable here.

We therefore find erroneous the trial court's ruling that an unverified physician's report cannot, as a matter of law, be considered evidence under section 2—402, even when accompanied by the deposition transcripts of the respondents-in-discovery and an affidavit of

the plaintiff's attorney. We remand the cause so that the trial court may consider the physicians' letters, plaintiff's attorney's affidavit, and the deposition transcripts in determining whether there is probable cause to name respondents as defendants.

Accordingly, for the reasons stated, we reverse the judgment of the circuit court of Du Page County and remand this cause for proceedings consistent with this opinion.

Reversed and remanded.

GEIGER and DOYLE, JJ., concur.