PHYLLIS COLEY, Guardian of the Person and Estate of Milton McElroy, Plaintiff-Appellant, v. ST. BERNARD'S HOSPITAL *et al.*, Defendants (Niluardo Cay *et al.*, Respondents in Discovery-Appellees).

First District (1st Division)   Nos. 1—94—3236, 1—95—0078 cons.

Opinion filed February 20, 1996.—Rehearing denied June 5, 1996.—Modified opinion filed June 10, 1996.

Mark Hillner, of Chicago, for appellant.

Clausen Miller, P.C., of Chicago (James T. Ferrini and Edward M. Kay, of counsel), for appellee Niluardo Cay.

Bollinger, Ruberry & Garvey, of Chicago (Maurice J. Garvey, Robert M. Collins, Kelly A. Giampa, and Christopher J. Dallavo, of counsel), for appellee Illinois Medicus, Ltd.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Phyllis Coley, as guardian of the person and estate of Milton McElroy, appeals orders of the circuit court of Cook County denying plaintiff's motion to convert respondents in discovery Dr. Niluardo Cay and Illinois Medicus, Ltd., to defendants. The defendants, St. Bernard's Hospital and Dr. Henry Tabe, are not parties to this appeal.

The record on appeal indicates the following facts. On December 6, 1991, plaintiff filed a medical malpractice action against the defendants. On March 23, 1992, plaintiff amended that complaint. The two-count complaint made similar allegations against each of the defendants. The complaint alleged that on December 8, 1989, Milton McElroy entered St. Bernard's Hospital and entrusted himself to the care of its agents and employees including, but not limited to, Dr. Tabe. The complaint charged the defendants with a number of allegedly negligent acts and omissions. The complaint claims that McElroy was externally and internally injured, suffered permanent damage to his central nervous system and will continue to suffer great and prolonged physical and mental pain and suffering, including damage to his brain and central nervous system. The complaint also states that McElroy has become liable for great sums of money for medical treatment and will continue to suffer loss of income and enjoyment of life. The complaint further states that on August 20, 1990, plaintiff was appointed guardian of McElroy due to his legal incapacity.

Pursuant to section 2—622 of the Illinois Code of Civil Procedure (735 ILCS 5/2—622 (West 1992)), plaintiff's attorney attached an affidavit to the complaint stating that: he had reviewed the facts of the case with a medical doctor; the doctor's written report, attached to the affidavit, indicates opinions "showing a reasonable cause for filing this meritorious cause of action"; and the attorney's opinion and that of the "qualified consulting health professional" were that St. Bernard's Hospital and its agents and employees conducted themselves in a fashion that fell below the standard of care applicable to hospitals and doctors.

The written report attached to the affidavit states that a physician board certified in emergency medicine examined McElroy's medical records from St. Bernard's Hospital "following his cardiac arrest on December 8, 1989," and concluded that there was a meritorious cause of action against St. Bernard's Hospital and Dr. Tabe based on the following:

"1. The deterioration of the arterial pH and the rise of serum carbon dioxide during the patient's first two hours in the emergency department were caused by inadequate ventilation and worsened the patient's prognosis.

2. The absence of detailed medical records suggests inadequate observation of a patient in critical care condition. St. Bernard's Hospital fell below the standard of care expected of a hospital in the United States.

3. Their failure to adjust the dopamine drip in a patient with hypertensive vital signs can worsen the patient's outcome. This was caused by lack of observation by the personnel of St. Bernard's Hospital and by lack of close follow up [by] Dr. Tabe.

4. Despite having been notified a short time after the arrest, Dr. Tabe did not examine the patient for a prolonged period of time. This is negligent practice in a patient who has been resuscitated from a cardiac arrest.

5. Intercranial hypertension is a common problem following cardiac arrest and worsens neurologic outcome. In order to avoid sequelae, it is critical to hyperventilate these patients and control their blood pressure. There is a significant likelihood that Mr. McElroy's final condition resulted from the failure to perform these basic interventions."

On December 3, 1993, plaintiff filed a "Designation of Respondents in Discovery" in which plaintiff named Illinois Medicus, Ltd., and Dr. Niluardo Cay as persons or entities believed by the plaintiff to have information essential to the determination of who should properly be named as an additional defendant in the action. Accordingly, plaintiff designated Illinois Medicus, Ltd., and Dr. Niluardo Cay as respon-

dents in discovery pursuant to section 2—402 of the Code of Civil Procedure (735 ILCS 5/2—402 (West 1992)).

On May 3, 1994, plaintiff filed a motion for leave to file a second amended complaint. The proposed amended complaint contained four counts. Counts I and IV were against St. Bernard's Hospital and Dr. Henry Tabe, containing allegations similar to those in the first amended complaint. Counts II and III were against Illinois Medicus, Ltd., and Dr. Niluardo Cay. The count against Illinois Medicus, Ltd., alleged that Illinois Medicus, Ltd., provided contractual emergency room services to St. Bernard's Hospital; the allegations of negligence were largely similar to those against St. Bernard's Hospital. The count against Dr. Cay contained allegations largely similar to those against Dr. Tabe.

Plaintiff's counsel attached an affidavit to the proposed second amended complaint. The affidavit stated that counsel had reviewed the facts of the case with several medical doctors familiar with emergency room treatment. The affidavit also stated that counsel deposed Drs. Tabe and Cay during the week of April 25, 1994. Following these depositions, counsel consulted with two additional physicians, who indicated in general terms that the delayed admission, diagnosis and treatment of McElroy, along with the failure to properly monitor and intubate McElroy, caused or contributed to McElroy's incapacity. Counsel attached the same written report of the doctor that had been attached to the first amended complaint.

On May 13, 1994, the trial court entered an order granting leave to file the motion as a motion to convert. The order also directed plaintiff to submit any supplemental documentation in support of the motion by May 23, 1994.

Plaintiff's counsel filed a "Revised Affidavit" on May 23, 1994. The revised affidavit is similar to the affidavit attached to the proposed second amended complaint, but added that

> "the physicians with whom [counsel] consulted *** indicated that there is a meritorious cause of action for medical negligence against Illinois Medicus and Dr. Niluardo Cay based upon Dr. Cay's delayed diagnosis of cardiac and cranial trauma, his failure to properly monitor medications provided to Mr. McElroy, the result of which was to dangerously elevate his blood pressure and cause intercranial damage, the failure to properly intubate Mr. McElroy and the failure to change medications as McElroy's cardiac, blood pressure and intercranial conditions changed. These physicians opined that such conduct was negligent and either caused or significantly contributed to his current mental incapacity."

The revised affidavit also stated that at the time McElroy was admitted to St. Bernard's Hospital, Illinois Medicus, Ltd., operated the emergency room and that Dr. Cay was employed or retained by Illinois Medicus, Ltd., to provide emergency physician services.

The revised affidavit further stated that the physicians consulted by counsel had opined that the failure of St. Bernard's Hospital, Illinois Medicus, Ltd., Dr. Henry Tabe and Dr. Niluardo Cay to maintain complete and thorough medical records concerning McElroy's treatment violated standards of record-keeping for hospitals and emergency rooms and made it difficult for more precise criticisms to be offered at that time. The revised affidavit further noted (as did the affidavit attached to the proposed second amended complaint) that certain records in the custody of St. Bernard's Hospital requested in 1990 were not produced until April 28, 1994, and that the doctors' opinions stated above were based on counsel's oral representations of the contents of those records. Thus, counsel requested a 90-day extension, pursuant to section 2—622, to file an additional medical report.

On June 17, 1994, Dr. Cay filed a special and limited appearance and a response to the motion to convert, arguing that plaintiff's documentation did not meet the standards required by sections 2—402 and 2—622. On July 27, 1994, plaintiff filed a reply to Dr. Cay's objections. Plaintiff's reply attempted to link Dr. Cay to the acts and omissions specified in the initial written doctor's report. Plaintiff's reply further stated that "Dr. Cay admitted in his deposition that he was the primary emergency room physician, as indicated in the attached emergency room admission records." The record does contain the medical record referenced in the reply. Dr. Cay subsequently filed another response; plaintiff filed a reply to that response.

On August 25, 1994, the trial court held a hearing on the motion to convert. The trial court concluded that plaintiff failed to present evidence sufficient to convert Dr. Cay to a defendant. The transcript of proceedings shows that plaintiff's counsel stated that there was additional information in the deposition of Dr. Cay, but that the deposition was not filed because he did not know that Dr. Cay was going to dispute that he was the admitting physician in this case. The trial court ruled that the proposed second amended complaint, the first medical provider's report and the plaintiff's counsel's revised affidavit were not evidence. The trial court noted that evidence would be in the form of medical records, affidavits or depositions. The trial court also ruled that if the requirements for section 2—622 were not met, the requirements for section 2—402 were not met. Thus, the trial court entered an order denying the motion to convert as to Dr.

Cay and finding no just reason to delay enforcement or appeal of the order. Plaintiff filed a timely notice of appeal to this court.

On November 29, 1994, the trial court issued a similar order denying the motion to convert as to Illinois Medicus, Ltd., and finding no just reason to delay enforcement or appeal of the order. Plaintiff filed a timely notice of appeal of that order to this court. The appeals were then consolidated.

# I

■ The issue on appeal is whether the trial court erred in denying the plaintiff's motion to convert Illinois Medicus, Ltd., and Dr. Niluardo Cay from respondents in discovery to defendants. Section 2—402 provides that a respondent in discovery can only be named as a defendant in the action on the plaintiff's motion (1) if the motion is made within the six-month period after the party was named a respondent in discovery, and (2) "if the evidence discloses the existence of probable cause for such action." (See 735 ILCS 5/2—402 (West 1992).) This court has held that the evidence necessary to establish the requisite probable cause need only be such as would lead a person of ordinary caution and prudence to believe or entertain an honest and strong suspicion that his injury was the proximate result of the tortious conduct of the respondent in discovery. See *Froehlich v. Sheehan* (1992), 240 Ill. App. 3d 93, 102, 608 N.E.2d 889, 896; *Ingle v. Hospital Sisters Health System* (1986), 141 Ill. App. 3d 1057, 1062, 491 N.E.2d 139, 143.

This standard does not rise to the level of a high degree of likelihood of success on the merits or the evidence necessary to defeat a motion for summary judgment in favor of the respondents in discovery. (See *Ingle*, 141 Ill. App. 3d at 1062-65, 491 N.E.2d at 142.) Although this requirement of section 2—402 is not merely "empty formalism" (*Froehlich*, 240 Ill. App. 3d at 103, 608 N.E.2d at 896), neither should it rise to the level of a substantive defense. (*Cf. Thompson v. Heydemann* (1992), 231 Ill. App. 3d 578, 582, 596 N.E.2d 664, 667 (interpreting section 2—622); *Moscardini v. Neurosurg, S.C.* (1994), 269 Ill. App. 3d 329, 334-36, 645 N.E.2d 1377, 1382 (sections 2—402 and 2—622 should be construed *in pari materia*).) Like section 2—622, section 2—402 was intended to deter frivolous actions; neither statute was intended as a means of depriving a plaintiff of a trial on the merits of his claim of malpractice. (See *Moscardini*, 269 Ill. App. 3d at 335, 645 N.E.2d at 1382.) Accordingly, the probable cause requirement of section 2—402 is to be liberally construed, to the end that controversies may be determined according to the substantive rights of the parties. See *Thompson*, 231 Ill. App. 3d at 582, 596 N.E.2d at 667.

For example, in *Moscardini*, which was decided approximately one month after the trial court entered the orders appealed from here, the appellate court stated that

"the term 'evidence' is not self-defining and can have different meanings depending on the context in which it is used. For example, what a court may consider as evidence differs depending on whether the context is that of a trial, where the rules of evidence strictly apply, or that of a probable cause hearing, where evidentiary standards are relaxed. [Citation.] Courts have traditionally allowed hearsay to be considered in the context of probable cause determinations, while it is generally inadmissible at trial. [Citations.] Looking to the language of section 2—402, we cannot say that it commands any particular construction of 'evidence.' " *Moscardini*, 269 Ill. App. 3d at 334, 645 N.E.2d at 1381.

Ultimately, the *Moscardini* court suggested that there was no reason to believe that an unsigned letter from a health professional and an attorney's affidavit, based on the information obtained during the statutory discovery period, could not be sufficient to satisfy the probable cause requirement of section 2—402. (*Moscardini*, 269 Ill. App. 3d at 336, 645 N.E.2d at 1382.) Indeed, the *Moscardini* court addressed the unsigned, unsworn physicians' letters as follows:

"There is nothing on the face of either of the letters submitted by plaintiff in the present case which would render them inherently incredible, and respondents have not alleged that they were procured through fraud. In fact, the attorney's affidavit affirms that the authors of the letters were consulted and that the opinions expressed are genuine. The trial court never implied that plaintiff's claim *** was frivolous, brought in bad faith, or with an intent to frustrate justice. In view of these facts, to rule that the letters, in conjunction with the deposition transcripts and the affidavit of plaintiff's attorney, could not be considered by the trial court in making its probable cause determination under section 2—402 would elevate form over substance and create an injustice inconsistent with the legislature's intent in passing sections 2—402 and 2—622." (*Moscardini*, 269 Ill. App. 3d at 336-37, 645 N.E.2d at 1383.)

Finally, it should be noted that the trial court's interpretation of the term "evidence" was a legal issue subject to a *de novo* review by this court. *Moscardini*, 269 Ill. App. 3d at 332, 645 N.E.2d at 1380.

■ In this case, the trial court ruled that the proposed second amended complaint, the first medical provider's report and the plaintiff's counsel's revised affidavit were not evidence. It is true that the proposed second amended complaint is not evidence. The medical provider's report is evidence; however, it may not be relevant evi-

dence, as it does not expressly attribute any acts or omissions to Illinois Medicus, Ltd., or Dr. Cay. The attorney's signed and sworn revised affidavit is evidence that specifically addresses Illinois Medicus, Ltd., and Dr. Cay. In addition, the medical admission record plaintiff filed in support of the motion to convert is evidence, although there is no indication in the record that it was considered by the trial court.

Plaintiff's counsel's sworn representation of the physicians' opinions may be hearsay, but the *Moscardini* opinion suggests that hearsay may be considered in determining probable cause under section 2—402. It should be noted that the physicians' opinions regarding Illinois Medicus, Ltd., and Dr. Cay are problematic insofar as they are apparently based on plaintiff's counsel's oral representations of the contents of certain medical records. However, in *Lee v. Chicago Transit Authority* (1992), 152 Ill. 2d 432, 605 N.E.2d 493, the defendant Chicago Transit Authority objected to expert testimony based on the representations of counsel, to which our supreme court replied as follows:

> "[W]e know of no rule which dictates the source of information upon which an expert must base his opinion. It would seem to us that the more relevant inquiry is the reliability of the information upon which the expert relies." (*Lee*, 152 Ill. 2d at 460, 605 N.E.2d at 505.)

In this case, as in *Moscardini*, there is nothing on the face of the revised affidavit that would render the opinions therein inherently incredible, and it was not alleged that the opinions were procured through fraud. In fact, the statements in the revised affidavit seem consistent with the medical record submitted by plaintiff in support of the motion to convert. Accordingly, in the context of a probable cause determination, using a broad construction of the term "evidence," the contents of the revised affidavit should have been considered.

Furthermore, plaintiff's counsel informed the trial court that the deposition of Dr. Cay contained evidence that Dr. Cay was the admitting physician who first treated McElroy. Although the trial court stated that a deposition would be considered evidence, there is nothing in the record indicating that the deposition was considered. The deposition was not included in the record on appeal. Plaintiff attached a portion of the deposition to her brief, which is the subject of a motion to strike as *dehors* the record. The motion to strike the matter *dehors* the record is hereby granted.

Nevertheless, counsel's representation of the contents of the deposition makes the contents and their relevance obvious. Plaintiff's

failure to file the deposition before the hearing may have been imprudent, but cannot be considered fatal, as section 2—402 does not require that the evidence supporting a finding of probable cause be filed prior to the hearing. Indeed, the hearing itself is not expressly mentioned in the statute; that requirement arises from this court's interpretation of the statute. See, *e.g., Froehlich*, 240 Ill. App. 3d at 102, 608 N.E.2d at 896.

In sum, the trial court erred in failing to consider the revised attorney affidavit and the medical record as evidence to establish probable cause to convert. In addition, the trial court was entitled to examine the deposition of Dr. Cay in determining whether probable cause was shown.

## II

■ The parties also argue at length whether the health professional's report in this case is sufficient under section 2—622. However, the orders appealed from are orders denying plaintiff's motion to convert. These orders could not be based on a failure to comply with section 2—622 because that section requires that a certificate and written report be filed "as to each defendant who has been named in the complaint." (735 ILCS 5/2—622(b) (West 1992).) A respondent in discovery who is not converted to a defendant under section 2—402 cannot be a defendant "named in the complaint." Thus, a plaintiff cannot be required to comply with section 2—622 as to respondents in discovery.

For all of the aforementioned reasons, the orders of the circuit court of Cook County are reversed and remanded with instructions to allow plaintiff's motion to convert the respondents in discovery into defendants.

Reversed and remanded.

BUCKLEY and WOLFSON, JJ., concur.