MARY McGEE, Indiv. and as Personal Representative of the Estate of Travis McGee, Deceased, Plaintiff-Appellant, v. JOHN A. HEIMBURGER, Defendant (James W. Heimburger *et al.*, Respondents in Discovery-Appellees).

Fourth District No. 4—96—0486

Argued December 17, 1996.—Opinion filed April 1, 1997.

David R. Moore (argued), of Follmer & Moore, of Urbana, for appellant.

Richard P. Klaus (argued), of Flynn, Palmer & Tague, of Champaign, for appellees.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In June 1995, plaintiff, Mary McGee (McGee), individually and as personal representative of the estate of Travis McGee, sued defendant, John Heimburger, to recover damages for Travis' injuries and his wrongful death that resulted when John shot him. McGee also

named John's parents, James and Judy Heimburger, as respondents in discovery, pursuant to section 2—402 of the Code of Civil Procedure (Code) (735 ILCS 5/2—402 (West 1994)).

In January 1996, McGee filed a motion to convert the respondents in discovery to defendants. McGee sought to allege a cause of action against Judy pursuant to section 4(c) of the Firearm Owners Identification Card Act (Act) (430 ILCS 65/4(c) (West 1992)) and against both James and Judy pursuant to section 3 of the Parental Responsibility Law (Responsibility Law) (740 ILCS 115/3 (West 1992)). In February 1996, the trial court conducted a hearing on McGee's motion to convert and denied it.

McGee appeals, arguing that the trial court erred by denying her motion to convert the respondents in discovery to defendants because (1) Judy is liable pursuant to section 4(c) of the Act; and (2) McGee established probable cause that John was an unemancipated minor pursuant to section 3 of the Responsibility Law.

We affirm in part, reverse in part and remand.

## I. BACKGROUND

On October 2, 1992, Judy executed written consent, pursuant to section 4(a)(2)(i) of the Act (430 ILCS 65/4(a)(2)(i) (West 1992)), authorizing John (her then-minor son, born June 17, 1975) to possess and acquire firearms and firearm ammunition. Judy gave her written consent as part of John's application for a firearm owner's identification (FOID) card. In June 1993, the Illinois State Police denied John's application because of his prior misdemeanor conviction for other than a traffic violation. On July 7, 1993, John shot Travis with a firearm and killed him.

At the February 1996 hearing on McGee's motion to convert, Champaign police detective Zane Ziegler testified that he interviewed John shortly after his arrest (a few days after the shooting). During that interview, John stated that he went home after the shooting; John further gave his parents' address when asked where his "home" was located. In her discovery deposition, Judy testified that John had moved from the family residence to a shared apartment sometime in early June 1993. She did not know whether he planned to stay "full[-]time" in the apartment. She testified that between early June 1993 and July 7, 1993, John did not pay all of his personal living expenses. However, she also said that she did not give John any living expenses during that time. She and her husband provided John with a vehicle for his use on a daily basis. They also maintained a furnished bedroom for John, which he frequently used. John also continued to receive some mail (magazines) at his parents' residence. During June and July 1993, John

worked on the family farm in exchange for other services, such as car insurance payments; he was not employed elsewhere at the time of the shooting.

After considering the evidence and the parties' arguments, the trial court denied McGee's motion to convert respondents in discovery to defendants. The court found that (1) section 4(c) of the Act—which McGee cited as the basis for her claims against Judy—"creates liability in the parent upon the parent's written consent on the application only if the application results in an effective [FOID] card being issued"; and (2) McGee failed to establish probable cause that John was an unemancipated minor residing with his parents at the time of the shooting pursuant to section 3 of the Responsibility Law.

## II. ANALYSIS

### A. Motion To Convert Judy to a Defendant Pursuant to the Act

McGee first argues that the trial court erred by denying her motion to convert Judy from a respondent in discovery to a defendant. McGee contends that once Judy provided written consent (on John's application for an FOID card) under section 4(c) of the Act for John to acquire and possess firearms and ammunition, she became liable for any damages resulting from John's use of firearms, even though the Illinois State Police subsequently denied John's application. Judy responds that because the Act governs the issuance of FOID cards, section 4(c) of the Act imposes liability on a parent only when the State issues an FOID card to that parent's child as a result of the parent's consent. We agree with that response.

■ Section 4(a)(2)(i) of the Act provides that an applicant for an FOID card who is under 21 years of age—as in this case—must obtain "the written consent of his parent or legal guardian to possess and acquire firearms and firearm ammunition." 430 ILCS 65/4(a)(2)(i) (West 1994). Section 4(c) of the Act provides as follows:

> "(c) Upon such written consent, pursuant to Section 4, paragraph (a)(2)(i), the parent or legal guardian giving the consent shall be liable for any damages resulting from the applicant's use of firearms or firearm ammunition." 430 ILCS 65/4(c) (West 1994).

■ When construing a statute, a court must ascertain and give effect to the legislature's intent in enacting the statute. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110, 610 N.E.2d 1250, 1253 (1993). The legislative intent is best determined by the language of the statute. *People v. Ferrell*, 277 Ill. App. 3d 74, 77, 659 N.E.2d 992, 995 (1995). A court construing a statute should read it as a whole, construing each provision in connection with every other provision. *Bonaguro v. County Officers Elec-*

*toral Board*, 158 Ill. 2d 391, 397, 634 N.E.2d 712, 714 (1994). A court also must consider the reason and necessity for the law, as well as the statute's objective. *Collins*, 155 Ill. 2d at 111, 610 N.E.2d at 1253. Further, when construing a statute capable of two interpretations, a court should provide that interpretation which is reasonable and which will not produce absurd, unjust, unreasonable, or inconvenient results that the legislature could not have intended. *People v. Stanciel*, 153 Ill. 2d 218, 233-34, 606 N.E.2d 1201, 1210 (1992).

■ The legislature enacted the Act to set forth a comprehensive scheme for the issuance of FOID cards. Section 1 of the Act provides that

> "in order to promote and protect the health, safety[,] and welfare of the public, it is necessary and in the public interest to provide a system of identifying persons who are not qualified to acquire or possess firearms and firearm ammunition *** by the establishment of a system of [FOID] [c]ards." 430 ILCS 65/1 (West 1994).

Construing the statute as a whole and giving the statutory language its reasonable meaning in light of the purpose of the Act, we conclude that section 4(c) of the Act imposes liability upon a parent or legal guardian (for damages resulting from a minor's use of a firearm or ammunition) *only* if and when the Illinois State Police approve the minor's application and issue the applicant an FOID card.

In so concluding, we note that parents and guardians are constantly called upon to grant consent to a minor child to engage in activities that carry the potential for substantial harm, such as driving an automobile. See 625 ILCS 5/6—107 (West 1994) (requiring parental consent for unemancipated minors under 18 years of age to obtain a driver's license). One hopes that consent, when granted, represents the parent's considered judgment that the child possesses the maturity and skill to engage in the activity in question. But the consent given is not determinative and is, at most, advisory. Parental consent is a necessary—but not sufficient—condition for issuance of the FOID card and may be overridden by the licensing authority, as was the case here, or even revoked by the parent resulting in cancellation of the card. See 430 ILCS 65/8(b) (West 1994); see also 625 ILCS 5/6—108(a)(1) (West 1994) (requiring cancellation of a driver's license or permit upon request of the person who consented to the application).

To be sure, had the Illinois State Police issued an FOID card in this case, liability would be clear; the legislature has determined that parents must bear automatic responsibility for the ill-advised consent they provide when it results in the minor legally acquiring a weapon or ammunition with which he then causes an injury during the pe-

riod of his minority. However, once the efficacy of the consent is *completely nullified* by the refusal of the State Police to recognize it, the causal connection between the consent and the injury caused by the minor's subsequent illegal conduct in acquiring and using firearms is effectively broken. Accordingly, we hold that the trial court did not err by denying McGee's motion to convert Judy from a respondent in discovery to a defendant pursuant to section 4(c) of the Act.

### B. Motion To Convert James and Judy to Defendants Pursuant to the Responsibility Law

Last, McGee argues that the trial court erred by denying her motion to convert James and Judy from respondents in discovery to defendants pursuant to section 3 of the Responsibility Law. McGee contends that she established probable cause that John was an unemancipated minor residing with his parents at the time of the shooting. We agree.

■ A plaintiff may request to add a respondent in discovery as a defendant pursuant to section 2—402 of the Code, which provides as follows:

> "The plaintiff in any civil action may designate as respondents in discovery in his or her pleading those individuals or other entities, other than the named defendants, believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action.
>
> Persons or entities so named as respondents in discovery \*\*\* may, on motion of the plaintiff, be added as defendants if the evidence discloses the existence of probable cause for such action." 735 ILCS 5/2—402 (West 1994).

In *Ingle v. Hospital Sisters Health System*, 141 Ill. App. 3d 1057, 1064-65, 491 N.E.2d 139, 144 (1986), this court discussed the showing necessary to establish such "probable cause" and wrote the following:

> "We have no reason to believe that the legislature intended that the probable cause issue under section 2—402 was to be decided upon the basis of considerations that would be present in ruling on a motion for summary judgment for the respondents-in-discovery. Nor do we believe that the plaintiff is required to show a *prima facie* case in order to require that respondents be made defendants. \*\*\* Rather, the question [here] is \*\*\* whether there exists an '*honest and strong suspicion*' that the respondents-in-discovery are liable." (Emphasis added.)

In determining whether a respondent in discovery may be added as a defendant, the trial court's role is that of gatekeeper—to simply assess whether it is fair to let the plaintiff proceed further against

the respondents in discovery and subject them to the fact-finding process. When resolving motions to convert respondents in discovery to defendants under section 2—402 of the Code, trial courts should bear in mind the following cautionary remarks this court wrote in *Ingle*—which we now reaffirm:

"The purpose of encouraging plaintiffs to name medical providers as respondents-in-discovery rather than defendants will not be served if a high degree of likelihood of success is necessary to be shown before such respondents can be named defendants. If that is required, plaintiffs will continue the practice of naming as defendants most [of] those who [plaintiffs might otherwise have designated only as respondents-in-discovery]." *Ingle*, 141 Ill. App. 3d at 1062, 491 N.E.2d at 142.

A trial court's ruling on a motion to add a respondent in discovery as a defendant is entitled to deference in circumstances in which the court has heard testimony and resolved conflicting evidence, and a reviewing court will not overturn the trial court's ruling unless it is against the manifest weight of the evidence. See *People v. Enis*, 163 Ill. 2d 367, 393, 645 N.E.2d 856, 867 (1994) (a trial court's determination that probable cause was established will not be disturbed unless against the manifest weight of the evidence).

However, where (1) the facts are undisputed, (2) the credibility of witnesses is not an issue, and (3) in-court testimony has not been presented, a question of law is presented, and a reviewing court may consider the question *de novo*. *People v. Besser*, 273 Ill. App. 3d 164, 167, 652 N.E.2d 454, 456 (1995). Because in this case the trial court considered in-court testimony as part of its decision, we will not overturn the trial court's ruling unless it is against the manifest weight of the evidence.

In the present case, McGee sought leave to add respondents in discovery as defendants pursuant to section 3 of the Responsibility Law. That section provides as follows:

"The parent or legal guardian of an unemancipated minor who resides with such parent or legal guardian is liable for actual damages for the wilful or malicious acts of such minor which cause injury to a person or property." 740 ILCS 115/3 (West 1992).

Thus, McGee was required to establish that a person of ordinary caution and prudence would entertain an honest and strong suspicion that John was an unemancipated minor residing with his parents pursuant to section 3 of the Responsibility Law. (It is undisputed that John was a minor under section 2 of the Responsibility Law (740 ILCS 115/2 (West 1992)) at the time of the shooting.)

Judy's deposition testimony showed that James and Judy

maintained a furnished bedroom for John, which he frequently used during the short time period between early June 1993 (when he moved to a shared apartment) and July 7, 1993 (the date of the shooting). In addition, the Heimburgers provided John with a vehicle that he used on a daily basis. John also continued to receive some mail at his parents' residence. Further, at the time of the shooting, he worked on the family farm in exchange for other consideration, such as car insurance payments.

Viewing the record before us in accordance with the appropriate standard of review and consistent with the low threshold plaintiff needs to cross of demonstrating the existence of only "probable cause," we conclude that the trial court's determination that McGee failed to establish that a person of ordinary caution and prudence would entertain an "honest and strong suspicion" that John was an unemancipated minor residing with his parents at the time of the shooting was against the manifest weight of the evidence. Accordingly, we hold that the trial court erred by denying McGee's motion to convert James and Judy from respondents in discovery to defendants pursuant to section 3 of the Responsibility Law.

We note in passing the following remarks from the trial court in this case that were directed to defense counsel at the hearing on plaintiff's motion to convert:

> "[Counsel, your opposing counsel] cites some factors that would raise a question about emancipation; whereas, you raise other factors that seem to indicate that the boy was not emancipated.
>
> With that presentation, isn't it a matter of fact that the jury has to decide rather than myself?"

The trial court was correct in this assessment; unfortunately, defense counsel subsequently persuaded the court to hold otherwise.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment in part and reverse in part, and remand for further proceedings consistent with the views expressed herein.

Affirmed in part and reversed in part; cause remanded with directions.

GARMAN and KNECHT, JJ., concur.