# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st) 093386

---

| | |
|---|---|
| Appellate Court Caption | LISA STONE, as Mother and Next Friend of Jed Stone, Petitioner-Appellee, v. PADDOCK PUBLICATIONS, INC., Respondent (John Doe, Intervenor-Appellant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-09-3386 |
| Filed | November 17, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action on a petition filed under Supreme Court Rule 224 seeking the disclosure of the true identity of the person who posted anonymous statements on a newspaper's comment board concerning a local election, the orders granting the petition were reversed where the petition failed to allege facts sufficient to support a cause of action for defamation as required by section 2-615 of the Code of Civil Procedure in order to show that disclosure of the person's identity was necessary. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-5636; the Hon. Jeffrey Lawrence, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Michael D. Furlong and Peter M. Trobe, both of Trobe, Babowice &
Associates LLC, of Waukegan, and Charles Mudd, Jr., of Mudd Law
Offices, of Chicago, for appellant.

Stephen L. Tyma and William A. O'Connor, both of Tyma O'Connor,
P.C., of Chicago, for appellee.

Panel

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with
opinion.
Justice Sterba concurred in the judgment and opinion.
Justice Salone specially concurred, with opinion.

## OPINION

¶ 1        This appeal has its genesis in online chat on a suburban newspaper's comment board
between two individuals (one later identified as a minor) who posted various sarcastic
comments about a local election under anonymous screen names. The minor's mother, a
candidate in the election, was the subject of much of the chatter and she ultimately filed a
petition pursuant to Supreme Court Rule 224 (Ill. S. Ct. R. 224 (eff. May 30, 2008)) on her
son's behalf, seeking the discovery of John Doe's identity due to his comments, which were
allegedly defamatory of her child. Ultimately, the trial court ordered that the identity of the
subscriber to the internet protocol (IP) address used by Doe when posting on the website
would be revealed to petitioner. Doe now appeals, asserting that the trial court erred by
applying an improper standard in determining whether petitioner was entitled to discover his
identity and by granting petitioner relief where the challenged comments do not constitute
defamation. Doe also contends that the challenged comments were immunized by the Citizen
Participation Act (735 ILCS 110/1 (West 2008)). We reverse.

¶ 2                                I. BACKGROUND
¶ 3        Petitioner Lisa Stone, acting as mother and next friend for her minor son Jed Stone, filed
petitions for discovery pursuant to Rule 224 naming Paddock Publications, Inc., as
respondent. These petitions indicated that respondent published an article that was made
available on its Daily Herald website on April 6, 2009. Like virtually all online newspaper's
sites, the online version of this article allowed the public to post and read comments without
specifically identifying themselves. On April 9, 2009, an individual with the user name
"Hipcheck16" posted an allegedly defamatory comment regarding Jed, who went by the

screen name "Uncle W" on this message board.[1] Petitioner urges that "[i]t is necessary to ascertain the identity of Hipcheck16, as he is a potential defendant for his defamatory remarks." Petitioner sought an order to obtain discovery from respondent, whom petitioner believed possessed the name and address of Hipcheck16. Although the posted comments were not recited in or attached to the petition, petitioner provided the challenged comments as well as additional dialogue between Jed and Hipcheck16 in later filings.

¶ 4     The record shows that on April 4, 2009, Hipcheck16 had made the following comments in response to a letter in support of petitioner's campaign for Buffalo Grove Village trustee, which was published on the Daily Herald's website:

"Here we go again–another brainwashed adolescent who can't form an opinion on their own. Lou–you're probably not old enough to vote, and I'm certain all you know about this election is what your mommy told you. I'll bet you've never been to a village board meeting and couldn't find village hall even if they were giving away free iPods there.

Do some of your own research on your wonderful candidate and you'll quickly discover that she is NOT QUALIFIED to be a trustee. She knows little about finance, NOTHING about business or village operations and can't seem to form a coherent thought–at least not ones that find their way out of her mouth.

Your parents should teach you the importance of having good community leaders, and a lesson on independent thinking would probably be beneficial too. While you're at it, perhaps you should work on that spelling and grammar stuff, as it seems to be an ongoing challenge for you, as well as other Stone supporters.

Now go watch MTV and quit inserting yourself into conversations for which you're not prepared. If you're 16, go take your Rottweiler for a nice long walk. And don't do heroin–it's bad for you."

On the same day, Hipcheck16 posted the following comments:

"Ooops–my previously post was directed at our little pal UncleW, not Lou. My apologies Lou!

I'm not perfect. But at least I know what a Home Rule Tax is. :)"

¶ 5     In response to an article which was primarily about candidate Joanne Johnson, the following colloquy ensued on April 8, 2009:

"HIPCHECK16: UncleW–funny how you suddenly surface again to gloat about Stone's win, and do so like the ill-informed punk that you really are. Didn't you learn last week that you should stay out of things you don't understand? Can you really be proud of a candidate who stood idly by while people claiming to be her supporters made anti-Semitic allegations about two of her opponents?

Whether or not Stone actually condoned the use of anti-Semitism is really not the

_____

[1]While both protagonists in this cyber drama posted anonymously, at some point, it became apparent that Hipcheck16 *thought* that Uncle W was, in fact, the son of petitioner, and later on, stated such on the website.

issue. She was aware that people who were in some way associated with her campaign were calling voters all over the village falsely accusing Johnson and Terson of running anti-Semitic campaigns. If she did not believe that Johnson and Terson were anti-Semitic, she could have made a public statement denouncing those calls and disassociating herself from the actions of what may have been a few overzealous supporters.

Instead, she took no action, allowing those rumors to spread. By not speaking out against such hate speech, she tacitly condoned it, knowing that it would work to her advantage in the election.

Now, that's something you can really be proud of, isn't it UncleW? Would you be down for a conversation about that?

UNCLEW: Yes Hipcheck, and like I said show yourself in person. With all your resources I'm sure you could navigate your way over to the Stone confines. Then I'll be glad to have this conversation with you, however, I will not continue to comment on these blogs where anyone can be anyone.

And HAPPY PESACH Hipcheck. Hopefully you will find the afikoman tonight.

HIPCHECK16: Thanks UncleW, ya little nebish. You have a nice little Pesach yourself. I may stop by tonight–have room for me at the Seder?

Some days I'm really ashamed of my fellow tribesmen, and today is one of them. You'll do anything to justify your actions, and your sense of entitlement sickens me. Your holier than thou attitude and arrogance is disgusting, but what's even worse is that just like your mommy and all her buddies, you think you're smarter than you really are. And there is nothing more dangerous than someone who is not nearly as smart as they think they are.

Hope you and daddy are in the front row at the board meetings so you can mouth answers to her, just like you did at the forum. Otherwise she'll be completely lost, and I don't think she should count on the other trustees for help, since she's already alienated herself from most of them. She's not qualified to carry the other trustee's briefcases–they know it and she knows it. Can't wait to watch her ummm and uhhh her way through the meetings–I'm in need of a good laugh.

Now go help mommy prepare her Seder so she doesn't break one of her acrylic nail extensions or accidentally wash off her fake tan.

UNCLEW: Ya got a name Mr. Hipcheck?"

¶ 6 The next day, Hipcheck16 posted the following comments, including the emphasized comments being challenged by petitioner:

"And as for you, UncleW...

*Thanks for the invitation to visit you.. but I'll have to decline. Seems like you're very willing to invite a man you only know from the internet over to your house–have you done it before, or do they usually invite you to their house?*

Plus, now that you have stupidly revealed yourself, you may want to watch what you say here–and consider the damage you've done by attacking sitting trustees and other

municipal officials that your mommy will now have to work with. Too bad she'll have to begin her tenure with apologies. These people are way too smart to just accept her outright. Their obligation is to the village, not to your mommy. If she thinks she's entitled to their respect simply because she got herself elected, she needs to think again. If I were her, I'd be working on some apologies and learning something about finance before she's sworn in.

Now quit gloating, you're looking as silly as your mommy did accosting voters at the polls." (Emphasis added.)

¶ 7    On April 13, 2009, after petitioner was elected as trustee, the Daily Herald's website published an article titled "Buffalo Grove trustees move forward after contentious campaign." In his comment posted below the article, Hipcheck16 stated as follows:

"The lies continue. In a blog under a previous article related to the election[,] Stone's son, writing under them [*sic*] name UncleW claims that his family received one of the robo calls. Now Stone claims they never got one. The least they could do is get their lies straight."

¶ 8    The trial court entered a written order permitting petitioner to engage in limited discovery to obtain the information necessary to identify Hipcheck16. Respondent apparently answered petitioner's discovery requests by informing petitioner that Hipcheck16's IP address was 24.1.3.203 and his e-mail address was hipcheck16@yahoo.com, but did not reveal Hipcheck16's name. In addition, it was determined that this IP address belonged to a Comcast Cable user or subscriber. Notwithstanding petitioner's failure to add Comcast as a Rule 224 respondent, petitioner then filed a motion seeking an order compelling Comcast to respond to a subpoena and provide the identity of the subscriber to the pertinent IP address. The trial court ordered Comcast to notify its subscriber that his identity was being sought by petitioner and to inform the subscriber that he could contest the subpoena. On August 5, 2009, Doe, user of the aforementioned IP address, filed a motion to quash petitioner's subpoena, arguing, in pertinent part, that petitioner failed to comply with Rule 224.[2] The trial court denied Doe's motion and apparently ordered Comcast to produce the information about the subscriber's identity *in camera*. Comcast notified Doe and petitioner of its compliance.

¶ 9    On October 9, 2009, Doe filed a "motion in opposition to turnover of identity," arguing that his first amendment rights would be jeopardized by disclosing his identity to petitioner and that petitioner should be required to allege with specificity the comments that were allegedly defamatory. Doe argued that petitioner's conclusory allegation that Doe had posted a defamatory comment was insufficient. On the same day, petitioner filed a motion to disclose Comcast's response to the subpoena. Petitioner identified the challenged statement, which she argued was not constitutionally protected speech.

¶ 10    Following a hearing on November 9, 2009, the trial court entered a written memorandum

_____

[2]We note that the name "John Doe" has been used with respect to both Hipcheck16 and the Comcast subscriber with the aforementioned IP address. Although an IP address subscriber and user can be different individuals, we refer to both in this instance as "John Doe."

opinion and order, essentially finding that when balancing Doe's constitutional rights and petitioner's right to redress, the identity of the subscriber with the aforementioned IP address should be disclosed. Nine days later, the trial court entered a written order stating that on December 18, 2009, it would turn over to petitioner's counsel the documents and information delivered to the court by Comcast. The court also restricted the individuals to whom Doe's identity could be revealed thereafter. On December 7, 2009, Doe filed a notice of appeal from those two trial court orders. It appears that the trial court subsequently stayed the enforcement of the latter order, pending resolution of this appeal.

¶ 11                     II. THE RULE 224 STANDARD

¶ 12    On appeal, Doe first asserts the trial court applied the wrong standard to determine whether petitioner was entitled to discover Doe's identity pursuant to Rule 224. This court generally reviews the trial court's ruling pursuant to Rule 224 for an abuse of discretion. *Maxon v. Ottawa Publishing Co.*, 402 Ill. App. 3d 704, 711 (2010). Nonetheless, statutory construction constitutes a question of law, which we review *de novo*. *Sardiga v. Northern Trust Co.*, 409 Ill. App. 3d 56, 61 (2011); see also *Maxon*, 402 Ill. App. 3d at 710 (the decision regarding what standard must be satisfied as to petitioner's potential defamation claim presents a question of law, which we review *de novo*). In determining what standard a petitioner must satisfy under Rule 224, we begin with the statute itself.

¶ 13    The primary rule of statutory construction is to effectuate the drafter's intent. *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441 (2005). The best evidence of such intent is the statutory language itself, which is to be given its plain meaning. *Johnston v. Weil*, 241 Ill. 2d 169, 175 (2011). Where the meaning is unclear, courts may consider the law's purpose and the evils the law was intended to remedy. *Johnston*, 241 Ill. 2d at 175-76. A statute's language is ambiguous where capable of being understood by reasonably well-informed individuals in multiple ways. *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 288 (2008). Furthermore, we are required to construe a statute in a constitutional manner where reasonably possible. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510 (2007).

¶ 14    Rule 224, entitled "Discovery Before Suit to Identify Responsible Persons and Entities," states as follows:

"(i) A person or entity who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for such discovery.

(ii) The action for discovery shall be initiated by the filing of a verified petition in the circuit court of the county in which the action or proceeding might be brought or in which one or more of the persons or entities from whom discovery is sought resides. The petition shall be brought in the name of the petitioner and shall name as respondents the persons or entities from whom discovery is sought and shall set forth: (A) *the reason the proposed discovery is necessary* and (B) the nature of the discovery sought and shall ask for an order authorizing the petitioner to obtain such discovery. The order allowing the petition will limit discovery to the identification of responsible persons and entities and

where a deposition is sought will specify the name and address of each person to be examined, if known, or, if unknown, information sufficient to identify each person and the time and place of the deposition." (Emphasis added.) Ill. S. Ct. Rs. 224(a)(1)(i), (a)(1)(ii) (eff. May 30, 2008).

Accordingly, the rule is intended to assist a potential plaintiff in seeking redress against a person who may be liable but the plain language of the rule also requires a petitioner to demonstrate the reason why the proposed discovery seeking the individual's identity is "necessary." The question before us is what standard a petitioner must satisfy to show that the proposed discovery is necessary. In determining what is required by this language, we keep in mind that Rule 224 applies not only to petitioner's potential defamation claim, but to any instance in which an unknown individual may be liable under any cause of action. We also adhere to our aforementioned duty to construe a statute in a constitutional manner where reasonably possible. *Wade*, 226 Ill. 2d at 510. This is consistent with the committee comments providing that Rule 224 "is not intended to modify in any way any other rights secured or responsibilities imposed by law." Ill. S. Ct. R. 224, Committee Comments (1989). Here, Doe contends that too low a standard will violate individuals' constitutional right to engage in anonymous speech and deter the political speech that ensues via the Internet.

¶ 15    As this court has recognized, while anonymous speech is a long-protected right of citizenship, there is no constitutional right to defame. *Maxon*, 402 Ill. App. 3d at 713. Nonetheless, the Supreme Court has recognized the important role that anonymous speech has played throughout history and that individuals sometimes choose to speak anonymously for the most constructive purposes. See *Talley v. California*, 362 U.S. 60, 64-65 (1960). In addition, identification and fear of reprisal may deter even peaceful discussions regarding important public matters. See *Talley*, 362 U.S. at 65; *People v. White*, 116 Ill. 2d 171, 177 (1987). "Anonymity is a shield from the tyranny of the majority." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). Thus, an author is generally free to decide whether he wishes to disclose his true identity and his decision not to do so is an aspect of the freedom of speech provided in the first amendment. *McIntyre*, 514 U.S. at 341-42. Furthermore, discussion of public issues as well as debate regarding candidates' qualifications are integral to the government established by our Constitution. *McIntyre*, 514 U.S. at 346. Political speech will occasionally have unpalatable consequences but our society gives greater weight to the value of free speech than the danger that free speech will be misused. *McIntyre*, 514 U.S. at 357. That the first amendment applies to speech via the Internet is also clear. See *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997).

¶ 16    In light of the foregoing, we recognize a plaintiff's right to seek redress for unprotected defamatory language but also avoid a construction of Rule 224 that would set forth a standard so low as to permit individuals to obtain the identity of those engaging in protected speech and effectively chill or eliminate the right to speak anonymously. We find that the Third District of this court has adopted the appropriate standard to achieve this balance while giving appropriate meaning to the language of Rule 224.

¶ 17    In the Third District's decision in *Maxon*, which was rendered after the judgment on appeal, this court held that where the trial court must rule on a Rule 224 petition based on a potential defamation cause of action, the court must ensure that the petition (1) is verified;

(2) states with particularity facts that would demonstrate a cause of action for defamation; (3) seeks only the identity of a potential defendant, rather than information necessary to demonstrate a cause of action for defamation; and (4) "is subjected to a hearing at which the court determines that the petition sufficiently states a cause of action for defamation against the unnamed potential defendant, *i.e.*, the unidentified person is one who is responsible in damages to the petitioner." *Maxon*, 402 Ill. App. 3d at 711. The *Maxon* court also found that section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)) provided a mechanism to determine whether the petition stated a cause of action. *Maxon*, 402 Ill. App. 3d at 711-12. The court observed that section 2-615 motions attack the legal sufficiency of the complaint based on defects appearing on the face of the complaint. *Maxon*, 402 Ill. App. 3d at 712. In considering whether to grant or deny a motion to dismiss, the court must determine whether the complaint standing alone has stated sufficient facts to demonstrate a cause of action pursuant to which relief may be granted. *Maxon,* 402 Ill. App. 3d at 712. The *Maxon* court further observed that defamation litigation is routinely addressed in the context of section 2-615 motions and that constitutional protections are considered as part of the *prima facie* case so that a plaintiff is required to plead facts to show that the allegedly defamatory statements are not constitutionally protected. *Maxon*, 402 Ill. App. 3d at 712. Accordingly, the *Maxon* court concluded that subjecting a Rule 224 petition to the scrutiny provided in section 2-615 would satisfy any constitutional concerns that arise from disclosing a potential defendant's identity. *Maxon*, 402 Ill. App. 3d at 712.

¶ 18 We agree that requiring a Rule 224 petitioner to provide allegations sufficient to overcome a section 2-615 motion to dismiss adequately balances the rights of a petitioner and the unidentified individual. We clarify, however, that an unidentified individual is not required to file such a motion, but rather, it remains the petitioner's burden to show that the discovery is necessary, *i.e.*, that petitioner can allege facts supporting a cause of action. While the *Maxon* court correctly found that this standard protects an anonymous individual's constitutional rights in the context of a defamation claim, we add that the appropriateness of this standard is not limited to speech-based claims. Section 2-615 does not permit the dismissal of a claim unless no set of facts can possibly be proved that would entitle the plaintiff to relief. *Iseberg v. Gross*, 227 Ill. 2d 78, 86 (2007). Thus, if a petitioner cannot satisfy the section 2-615 standard, it is clear that the unidentified individual is not responsible for damages and the proposed discovery is not "necessary." Ill. S. Ct. Rs. 224(a)(1)(i), (a)(1)(ii) (eff. May 30, 2008).

¶ 19 Doe suggests a summary judgment standard, relying on *Mobilisa, Inc. v. Doe*, 170 P.3d 712 (Ariz. Ct. App. 2007). In *Mobilisa, Inc.*, the Court of Appeals of Arizona examined an Arizona rule of civil procedure that permitted the plaintiff to file an application seeking the identity of an anonymous individual *after* the complaint had been filed. *Mobilisa, Inc.*, 170 P.3d at 715-16. After discussing the need to balance the first amendment rights of anonymous Internet speakers and the rights of those seeking redress for improper communications, the court held that a party requesting an anonymous speaker's identity must (1) show that such person has received adequate notice and a reasonable opportunity to respond to the plaintiff's discovery request; (2) demonstrate that the requesting party would survive a motion for summary judgment filed by the anonymous speaker as to all elements

within the control of the requesting party, *i.e.*, "all elements not dependent upon knowing the identity of the anonymous speaker"; and (3) show that a balance of the parties' competing interests weighs in favor of disclosure. *Mobilisa, Inc.*, 170 P.3d at 717-20. We note that in finding that a motion to dismiss standard "would set the bar too low," the court observed that Arizona was a notice-pleading state, and thus, a complaint was merely required to provide a short and plain statement establishing that the plaintiff was entitled to relief. *Mobilisa, Inc.*, 170 P.3d at 720.

¶ 20 While we agree with the important objective of protecting anonymous speech, a summary judgment standard cannot be harmonized with the specific procedural posture of a Rule 224 petition. In *Mobilisa, Inc.,* a complaint had already been filed at the time the application to discover the anonymous person's identity was filed pursuant to the Arizona statute. In contrast, the petition set forth in Rule 224 is filed prior to the filing of a complaint. Accordingly, a Rule 224 petitioner has not had the benefit of discovery. Indeed, the language of the rule itself prohibits seeking any discovery pertaining to the merits of the petitioner's cause of action. Ill. S. Ct. R. 224(a)(1)(ii) (eff. May 30, 2008) ("The order allowing the petition will limit discovery to the identification of responsible persons and entities ***."); see also *Malmberg v. Smith*, 241 Ill. App. 3d 428, 432 (1993) (finding that discovery pursuant to Rule 224 is limited to obtaining the identities of potential defendants). In assessing a motion for summary judgment, however, we must consider the depositions, affidavits, exhibits, admissions and pleading on file and strictly construe them against the moving party. *F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 372 Ill. App. 3d 89, 93 (2007). Thus, a party responding to a summary judgment motion may rely on evidence obtained in discovery to defeat the motion. If the summary judgment standard were to be applied strictly to Rule 224 petitions, petitioners seeking redress for even meritorious claims may be denied relief because they lack evidence that they have no means to obtain until discovery ensues. Assuming that *Mobilisa, Inc.*'s language limiting the applicant's burden to support "all elements not dependent upon knowing the identity of the anonymous speaker" means all elements not dependent on evidence within the anonymous person's control, such a modified summary judgment standard may provide the anonymous speaker with less protection than the standard required for a motion to dismiss in Illinois.

¶ 21 In contrast to Arizona, Illinois is a fact-pleading jurisdiction, requiring plaintiff to allege facts, rather than mere conclusions, to demonstrate that his claim constitutes a viable cause of action. *Iseberg*, 227 Ill. 2d at 86. To survive a motion to dismiss, the plaintiff must allege specific facts supporting *each element of his cause of action* and the trial court will not admit conclusory allegations and conclusions of law that are not supported by specific facts. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 406 Ill. App. 3d 325, 336 (2010). In contrast, the modified summary judgment standard would permit a petitioner to obtain the anonymous person's identity without even providing allegations in support of certain elements where the evidence pertaining to such elements was in control of the anonymous person. Because the motion to dismiss standard best balances the need to protect the anonymous party's rights and the interests of the party seeking redress, we find that *Maxon*, rather than *Mobilisa, Inc.*, sets forth the correct standard.

¶ 22                                    III. DEFAMATION

¶ 23        We now examine the Rule 224 petition before us. As stated, the petition and amended petition, both of which were filed prior to the *Maxon* decision, failed to identify the allegedly defamatory statements. See *Green v. Rogers*, 234 Ill. 2d 478, 492 (2009) (a complaint for defamation *per se* is not required to state the allegedly defamatory words *in haec verba* but the substance of the statement must be pled with precision and particularity sufficient to allow an initial review of its defamatory content). Nonetheless, even when considering the statements subsequently provided by petitioner, she cannot establish a cause of action for defamation against Doe.

¶ 24        To state a claim for defamation, a plaintiff must present facts demonstrating that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of the subject statement to a third party, and that the publication caused damages to the plaintiff. *Green*, 234 Ill. 2d at 491. A statement is defamatory if it harms an individual's reputation by lowering the individual in the eyes of his community or deters the community from associating with him. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (2006). There are two forms of defamation: defamation *per se* and defamation *per quod*. *Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62, 68 (2010).

¶ 25        A statement is defamatory *per se* if the resulting harm is apparent and obvious on the face of the statement. *Tuite*, 224 Ill. 2d at 501. If a statement is defamatory *per se*, the plaintiff is not required to plead actual damage to his reputation but, rather, the statement is considered to be so obviously and materially harmful that injury to the plaintiff's reputation is presumed. *Moore*, 402 Ill. App. 3d at 68. Because defamation *per se* relieves a plaintiff of his obligation to prove actual damages, this claim must be pled with a heightened level of particularity and precision. *Green*, 234 Ill. 2d at 495. There are five categories of statements that are deemed to be defamation *per se*: (1) words imputing the commission of a criminal offense; (2) words that impute infections with a loathsome communicable disease; (3) words that impute an individual is unable to perform his employment duties or otherwise lacks integrity in performing those duties; (4) words that prejudice an individual in his profession or otherwise impute a lack of ability in his profession; and (5) words that impute an individual has engaged in fornication or adultery. *Tuite*, 224 Ill. 2d at 501. Here, petitioner contends that the challenged statement suggests Jed solicits men for sex and, thus, falls within the first and last categories.

¶ 26        In addition to the aforementioned requirements, our supreme court has recognized that there are three types of actions in which an allegedly defamatory statement has been held to be protected by the first amendment in the absence of a showing that the statement is *factual*: (1) actions brought by public officials; (2) actions brought by public figures; and (3) actions brought against media defendants by private individuals. *Imperial Apparel, LTD v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 398-99 (2008); see also *Moore*, 402 Ill. App. 3d at 68 (a defamation action cannot be based on statements that do not contain factual assertions, as such statements are protected by the first amendment). In those circumstances, the first amendment prohibits actions for defamation based on loose and figurative language that no person would reasonably believe presented a fact. *Imperial Apparel, LTD*, 227 Ill. 2d at 397; see also *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (the first amendment

protects statements that cannot be reasonably construed as stating actual facts regarding an individual). To determine whether a statement is protected by the first amendment from defamation claims, the test is whether the statement can reasonably be interpreted as stating a fact, considering (1) whether the statement has a readily understood and precise meaning; (2) whether the statement can be verified; and (3) whether its social or literary context signals that it has factual content. *Imperial Apparel, LTD*, 227 Ill. 2d at 398. Although we evaluate the statement from an ordinary reader's perspective, the court itself must determine as a question of law whether the statement is a factual assertion that could support a defamation claim. *Imperial Apparel, LTD*, 227 Ill. 2d at 398.

¶ 27    Our supreme court has also observed that it remains unsettled whether this first amendment privilege extends to statements made by one private individual about another regarding a private concern. *Imperial Apparel, LTD*, 227 Ill. 2d at 399; see also *Milkovich*, 497 U.S. at 20 n.6 (reserving judgment on cases involving nonmedia defendants). The court observed that the benefits of extending this privilege to private individuals included achieving consistent outcomes where an individual seeks recovery from both private individuals and a media defendant. *Imperial Apparel, LTD*, 227 Ill. 2d at 400. In addition, the court observed this approach recognizes that the status of the defendant who publishes the speech does not dictate its inherent worth as it relates to the ability to inform the public. *Imperial Apparel, LTD*, 227 Ill. 2d at 400. The court further observed that this approach reduces ambiguity, which can otherwise foster fear of liability as well as self-censorship and inhibit the free flow of protected expression. *Imperial Apparel, LTD*, 227 Ill. 2d at 400. Nonetheless, the court determined that it need not resolve this unsettled matter because the parties had not challenged the assumption of the trial court and appellate court that this privilege applied. *Imperial Apparel, LTD*, 227 Ill. 2d at 400.

¶ 28    Similarly, here, the parties have not questioned whether a statement must assert a fact in order to support a claim for defamation where one private individual, Doe, has made a statement against another private individual, Jed. We are persuaded by the policies set forth by the supreme court that this requirement should not be limited by the status of the speaker or the person being spoken about. In support of our determination, we also observe it appears that another district of this court has intuitively applied the factual assertion requirement to a claim brought by a private individual and entity against a nonmedia defendant. See *J. Maki Construction Co. v. Chicago Regional Council of Carpenters*, 379 Ill. App. 3d 189, 190-91, 199-202 (2d Dist. 2008) (where nonunion construction company and its owner brought a defamation action against the carpenters' union and three of its organizers, the Second District found that the allegedly defamatory statements failed to include an actionable factual assertion).

¶ 29    Here, we find that no reasonable person would find the challenged statement presented a *fact* regarding Jed, let alone a factual assertion that Jed, a minor, solicits men for sex over the Internet. Jed invited Doe to speak face to face for the purposes of political discussion. It was in response to this invitation that Doe made the following statements: "Thanks for the invitation to visit you.. but I'll have to decline. *Seems like you're very willing to invite a man you only know from the internet over to your house–have you done it before, or do they usually invite you to their house?*" (Emphasis added). The emphasized language presents a

question to Jed. Doe has not affirmatively represented that Jed has previously invited men over or that men have invited Jed over. In addition, the dialogue between Jed and Doe shows that they have never met and indicates that their knowledge of each other is limited to the confines of their exchanges in this forum. Thus, Doe has not given readers any reason to believe that he would have the ability to know of any such conduct. The challenged comment lacks a readily understood and *precise* meaning that can be verified and contains no factual content whatsoever. Even assuming the challenged comment had made a factual assertion, we find it is subject to an innocent construction.

¶ 30 A statement will not be actionable *per se* if it can easily and reasonably be subjected to an innocent construction. *Green*, 234 Ill. 2d at 500. Pursuant to this principle, a court must consider the alleged statement in context, giving the words and any resulting implications their natural and obvious meaning. *Green*, 234 Ill. 2d at 499. If the actual words do not alone denote criminal or unethical conduct and have a broader meaning in common usage than the meaning ascribed by the plaintiff, the words are not actionable as defamation *per se*. *Moore*, 402 Ill. App. 3d at 70. Whether a statement is entitled to an innocent construction presents a question of law which we review *de novo*. *Moore*, 402 Ill. App. 3d at 70.

¶ 31 Even assuming Doe's question constitutes a factual representation, at best, it is merely a factual assertion that Jed has invited men over or that men have invited Jed over. Given the context of Doe declining Jed's invitation to meet for a political discussion, we do not agree that a sexual connotation is inherent in Doe's statement. In addition, inviting anonymous individuals on the Internet to meet in person, regardless of the purpose, involves inherent risks. While many anonymous individuals genuinely seek intellectual discourse, others have more devious purposes, sexual, violent, or otherwise. Thus, even if a sexual connotation can be read into Doe's comment, his comment may represent nothing more than an admonishment that Jed's conduct in inviting Doe to meet in person was unwise, not that Jed actually solicits or has been solicited for sex with anonymous men on the internet. Accordingly, Doe's statement is entitled to an innocent construction.

¶ 32 We further find petitioner has not alleged facts sufficient to show that Doe may be responsible in damages for defamation *per quod*. Statements are defamatory *per quod* where either (1) the statement's defamatory character is not apparent on its face so that examining extrinsic circumstances is necessary to show its injurious meaning; or (2) the statement is defamatory on its face but does not fall within the enumerated categories of *per se* actions. *Schivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 759 (2002). Prejudice is not presumed, however, and the plaintiff must plead special damages. *Tuite*, 224 Ill. 2d at 501. Here, petitioner has not alleged special damages. Accordingly, she has not shown that Doe's identity is necessary for Jed to pursue a cause of action for defamation *per quod* against Doe.

¶ 33 For the foregoing reasons, we hold that a Rule 224 petition must allege facts sufficient to support a cause of action, as required by section 2-615 of the Code, in order to demonstrate that the discovery of an anonymous individual's identity is necessary. We also find that, here, petitioner failed to satisfy that standard and thus, was not entitled to discover Doe's identity. In light of our determination, we need not consider the parties' remaining arguments. Accordingly, we reverse the trial court's orders permitting Doe's identity to be turned over to petitioner and her counsel.

¶ 34                              IV. CONCLUSION

¶ 35        Our nation has long prized a citizen's right to speak anonymously. With the proliferation of the seemingly limitless vehicles for such speech on the Internet and the various forms of social media, our citizens now have outlets for anonymous free speech that were quite simply unimaginable only a decade ago. While the law is clear that there is no right to defame another citizen, we cannot condone the inevitable fishing expeditions that would ensue were the trial court's order to be upheld. Encouraging those easily offended by online commentary to sue to find the name of their "tormenters" would surely lead to unnecessary litigation and would also have a chilling effect on the many citizens who choose to post anonymously on the countless comment boards for newspapers, magazines, websites and other information portals. Putting publishers and website hosts in the position of being a "cyber-nanny" is a noxious concept that offends our country's long history of protecting anonymous speech.

¶ 36        Reversed.

¶ 37        JUSTICE SALONE, specially concurring:

¶ 38        I concur with the result reached by the majority, that petitioner has not shown a potential defamation claim. I write separately, however, because I do not agree that the majority has chosen the proper standard to analyze petitioner's claim. In my view, the appropriate standard of proof for Rule 224 petitions is probable cause. I reject the majority's standard because it (1) contravenes the drafter's intent; (2) places an undue burden on petitioners; (3) encourages unnecessary litigation; and (4) fails to protect anonymous speech.

¶ 39        As the majority properly states, the purpose of statutory and rule construction is to give effect to the intent of the drafters. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 217 (2008). The intent of the drafters is best ascertained through analysis of the plain language of the rule and any comments made by the drafters. *Cinkus*, 228 Ill. 2d at 218. Since the majority has already quoted the rule, I begin my interpretation with the committee comments.

¶ 40        The committee comments explain that the purpose of Illinois Supreme Court Rule 224 (eff. May 30, 2008) is to "provide[ ] a tool by which a person or entity may, with leave of court, compel limited discovery before filing a lawsuit in an effort to determine the identity of one who may be liable in damages." Ill. S. Ct. R. 224, Committee Comments (Aug. 1, 1989). It further states that it "provides a mechanism for plaintiffs to ascertain the identity of potential defendants in a variety of civil cases, including Structural Work Act, products liability, malpractice and negligence claims. *** The rule facilitates the identification of potential defendants through discovery depositions or through any of the other discovery tools set forth in Rules 201 through 214." Ill. S. Ct. R. 224, Committee Comments (Aug. 1, 1989).

¶ 41        Based on these comments, I believe that Rule 224 was drafted to aid potential plaintiffs in obtaining discovery in civil actions where the identity of the potential defendant is unknown. The rule also seeks to prevent the evil of parties escaping liability in civil actions by intentionally or unintentionally remaining anonymous. As a practical matter, the rule

combats the practice of naming a multitude of defendants due to a plaintiff's uncertainty regarding who may be liable in damages. Unfortunately, the committee comments do not address the standard of proof required for petitioner to succeed with any additional specificity. Therefore, our analysis must go outside of the rule itself. *Cinkus*, 228 Ill. 2d at 218. This court is not without direction, however, as our supreme court has instructed us that the supreme court rules, to the extent that they are not regulated by another statute, are to be read together with article II of the Code of Civil Procedure because they both apply to all proceedings in the trial court. *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 354 (2006).

¶ 42                    *In Pari Materia* and Probable Cause

¶ 43    The doctrine of *in pari materia* may properly be employed where, in the course of construction, a related provision of a separate enactment aids in determining the meaning of an otherwise ambiguous rule. *Cinkus*, 228 Ill. 2d at 218. *In pari materia* permits the court to read two enactments with reference to each other, so as to give effect to all of the provisions of each where possible. *Cinkus*, 228 Ill. 2d at 218. In my view, the best solution to the question of the appropriate standard of proof for Rule 224 is to employ the doctrine of *in pari materia* and compare Rule 224 and article II, section 2-402, of the Code of Civil Procedure (Code) (735 ILCS 5/2-402 (West 2008)) because they are both governed by a single policy and one spirit. *Cinkus*, 228 Ill. 2d at 218.

¶ 44    Article II, section 2-402, of the Code, entitled "Respondents in Discovery," provides a mechanism for plaintiffs in a civil action to name as respondents in discovery individuals who are believed "to have information essential to the determination of who should be properly named as additional defendants in the action." 735 ILCS 5/2-402 (West 2008). It further permits plaintiff to add such respondents as named defendants "if the evidence discloses the existence of probable cause for such action." 735 ILCS 5/2-402 (West 2008). This court has determined that probable cause exists under section 2-402 "where a person of ordinary caution and prudence would entertain an honest and strong suspicion that the purported [conduct] of the respondent in discovery was a proximate cause of plaintiff's injury." *Jackson-Baker v. Immesoete*, 337 Ill. App. 3d 1090, 1093 (2003). Such evidence "need not rise to the level of a high degree of likelihood of success on the merits or the evidence necessary to defeat a motion for summary judgment in favor of the respondents in discovery, nor is the plaintiff required to establish a *prima facie* case against the respondent in discovery." *Jackson-Baker*, 337 Ill. App. 3d at 1093.

¶ 45    Section 2-402 provides for the use of discovery to identify "who should be properly named as *** defendants in the action" (735 ILCS 5/2-402 (West 2008)), while Rule 224 seeks to "facilitate[ ] the identification of potential defendants through discovery" (Ill. S. Ct. R. 224, Committee Comments (Aug. 1, 1989)). In addition to providing a means for an injured party to name the proper party who may be liable, both section 2-402 and Rule 224 seek to minimize unnecessary litigation caused by naming every potential party and requiring each to individually challenge his or her culpability. Indeed, our supreme court has determined that one purpose of this statute is to provide plaintiff attorneys with a means of

filing suits without "naming everyone in sight as a defendant." *Bogseth v. Emanuel*, 166 Ill. 2d 507, 514 (1995). Thus, the language of both enactments shows that they are governed by a single policy of limiting unnecessary litigation, and by a single spirit of facilitating redress for injured parties.

¶ 46    The jurisprudence of both enactments also evinces that they should be considered *in pari materia,* because they both: (1) share the purpose of deterring frivolous actions without depriving an injured party of a trial on the merits (*Coley v. St. Bernard's Hospital*, 281 Ill. App. 3d 587, 592 (1996); *Maxon v. Ottawa Publishing Co.*, 402 Ill. App. 3d 704, 711 (2010)); (2) contemplate the same causes of action (*Bogseth*, 166 Ill. 2d at 515; Ill. S. Ct. R. 224, Committee Comments (Aug. 1, 1989)); (3) operate using the mechanism of discovery (*Murphy v. Aton*, 276 Ill. App. 3d 127, 129 (1995); *Kamelgard v. American College of Surgeons*, 385 Ill. App. 3d 675, 686 (2008)); and (4) require leave of the court (*Kamelgard*, 385 Ill. App. 3d at 686; *Medjesky v. Cole*, 276 Ill. App. 3d 1061, 1064 (1995)). Although Rule 224 and section 2-402 provide for their common purpose at separate stages in civil proceedings,[3] this is a distinction without a difference, where both provisions serve the same policy and spirit of providing aggrieved persons with a means to ascertain who may be properly named as defendants. Thus, the jurisprudence of Rule 224 and section 2-402 supports requiring the same standard of proof for both potential and actual plaintiffs.

¶ 47    In order to meet our mandate of interpreting both enactments consistently and harmoniously (*Cinkus*, 228 Ill. 2d at 218; *Rodriguez*, 218 Ill. 2d at 354), this court should adopt the standard that a petitioner need only establish probable cause to establish the requisite "reason the proposed discovery is necessary" as stated in Illinois Supreme Court Rule 224. Rule 224 is silent regarding the applicable standard of proof required in such actions, while section 2-402 provides that a plaintiff may add as a defendant, a respondent in discovery, where the evidence discloses the existence of probable cause to do so. 735 ILCS 5/2-402 (West 2008). Since both Rule 224 and section 2-402 have a common purpose and spirit, I must conclude that the appropriate standard of proof for Rule 224 petitions is the probable cause standard. As I explain below, I find no basis in law to require more proof from an injured person who is a Rule 224 petitioner than we require from a person who is an actual plaintiff.

¶ 48    The majority's *prima facie* standard narrows the possibility of redress for meritorious claims without justification and in contravention of the stated purpose and jurisprudence of Rule 224. Unlike the majority, I find no justification, either in the language of Rule 224 or applicable case law, for requiring a higher standard of proof for potential plaintiffs who are unaware of the identity of a single potential defendant than plaintiffs who purport to know the identity of a single defendant. In addition, our supreme court held in *Bogseth* that a plaintiff may not file a suit against a fictitiously named defendant and seek to ascertain the identity of proper defendants by naming them as respondents in discovery pursuant to section

---

[3]Section 2-402 is to be used after a suit has been filed for the purpose of discovering additional potential defendants (*Bogseth*, 166 Ill. 2d at 513), while Rule 224 provides for presuit discovery (*Kamelgard*, 385 Ill. App. 3d at 684).

2-402. *Bogseth*, 166 Ill. 2d at 514. Therefore, only Rule 224 provides an injured party with a means of redress where the identity of the potential defendant is unknown. In my view, the majority's holding, which creates a distinction between actual and potential plaintiffs based on their ability to identify a single defendant, instead of the merits of their claims, contravenes the basic tenet of Illinois jurisprudence, which favors having controversies determined according to the substantive rights of the parties. *Jackson-Baker*, 337 Ill. App. 3d at 1095.

¶ 49                    Holding Contravenes Purpose of Rule 224

¶ 50        By requiring *prima facie* evidence, the majority's holding is contrary to the drafters' intent for Rule 224 because it requires petitioners to seek to establish actual liability. For nearly a century our supreme court has maintained that "[i]f there is no evidence to [contradict] a *prima facie* case, it becomes conclusive and justifies a verdict." *Vischer v. Northwestern Elevated R.R. Co.*, 256 Ill. 572, 578 (1912). Indeed the very definition of *prima facie* evidence is, "evidence which is sufficient to authorize a finding on the matter in issue unless contradicted or explained." *Johnson v. Pendergast*, 308 Ill. 255, 261 (1923). As such, the majority's holding is contrary to this court's holding in *Beale v. EdgeMark Financial Corp.*, 279 Ill. App. 3d 242, 252 (1996), wherein this court held that "[w]hen in the trial court's discretion the petitioner seeks to establish *actual liability or responsibility rather than potentiality for liability*, discovery should be *denied*." (Emphasis added.) *Beale*, 279 Ill. App. 3d at 253. Thus, by requiring *prima facie* evidence in a Rule 224 petition, the majority is requiring a petitioner to provide evidence sufficient to establish actual liability, which would then justify the denial of a petition under *Beale. Beale*, 279 Ill. App. 3d at 253. Because the majority does not overturn or distinguish *Beale*, its holding requires petitioner to provide *prima facie* evidence which does not establish actual liability. Reading the majority's holding and *Beale* together, a petition can be denied for alleging both insufficient and excessive evidence. Such a standard goes beyond contradicting the purpose of Rule 224 and enters the realm of legal fiction.

¶ 51                         Undue Burden on Petitioners

¶ 52        In addition to being contrary to the purpose of Rule 224, the majority's holding places an undue burden on petitioners. While recognizing that Rule 224 extends beyond the limited context of defamation, the majority fails to address how a petitioner's claim, and, *e.g.,* the proof required for that claim, may depend upon the relationship between the petitioner and the potential defendant. A published statement against a petitioner may give rise to claims of defamation, if made by a stranger; or breach of fiduciary duty, if made by a fiduciary; or tortuous interference with a business expectancy, if made by a competitor. Each claim is composed of separate and distinct elements, requiring separate factual allegations to satisfy the *prima facie* requirement. Thus, a petitioner who is legally entitled to recover would be denied because the burden created by the majority's holding is insurmountable, absent the identity of the speaker. Indeed, the majority cites this very same reason for rejecting the summary judgment standard advanced by Doe, stating, "petitioners seeking redress for even

-16-

meritorious claims may be denied relief because they lack evidence which they have no means to obtain until discovery ensues." *Supra* ¶ 20.

¶ 53    Not only does the majority's holding ignore the interdependent nature of certain claims and the relationship between the parties, it also assumes that the unidentified person would oppose the Rule 224 petition. The majority's standard requires the petitioner to be able to establish facts capable of surviving a motion to dismiss pursuant to section 2-615 of the Code. *Supra* ¶ 18. However, neither Rule 224 nor the majority's holding requires the unidentified party to be present to oppose the petition. The decision to file a motion to dismiss and the content of said motion are strategic decisions to be made by trial counsel. *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 130 (2010). The effect of the majority's assumption is that it places the trial court in the position of being both opposing counsel and judge in cases where the unidentified party is not represented. Because the majority's opinion assumes opposition to the petition, where the unidentified party is not represented, the only remaining body to perform such a function, which is required under the majority's holding, is the trial court. In practice the trial court would have to assume the trial strategy of the unidentified party, perform that trial strategy by way of creating the substance of the hypothetical motion in opposition, and then evaluate the hypothetical motion that it created against plaintiff's petition, without permitting petitioner to draft a response. This places an extreme burden on a petitioner with limited information to anticipatorily overcome the hypothetical motion created by the trial court, without an opportunity to draft a response to the hypothetical motion. By contrast, the opportunity to respond would be provided if petitioner simply filed the exact same factual allegations in the form of a complaint in the circuit court against a suspected defendant.

¶ 54    The majority's holding also ignores the practical impact that the *prima facie* standard would have on statutes of limitations. A Rule 224 petition must claim that the petitioner is already injured by an unknown person's conduct. As such, the statute of limitations for petitioner's claim will have begun to run no later than the filing date of the petition. In my view, requiring a petitioner to obtain the level of evidence required in a civil complaint solely to ascertain the identity of an unknown party, without tolling the statute of limitations, places the injured petitioner at an extreme disadvantage. The majority ignores the risk of a meritorious claim lapsing due to petitioner's required search for *prima facie* evidence or due to the trial court's deliberations in ruling on the petition. This risk is magnified where the statute of limitations may be less based solely on the identity of the potential defendant, *i.e.*, the statute of limitations for a claim against a municipality (745 ILCS 10/8-101 (West 2010)) is less than the statue of limitations for the same conduct against a private person (735 ILCS 5/13-205 (West 2010)). For these reasons, I believe that the majority's holding places an undue burden on petitioners.


¶ 55                        Encouraging Unnecessary Litigation

¶ 56    The majority's *prima facie* standard also encourages unnecessary litigation by requiring excessive evidence at the pre-suit stage. As described above, the majority's *prima facie* standard requires the same level of evidence required for an unopposed plaintiff to succeed

on the merits of his claim. *Vischer*, 256 Ill. at 578. Thus, as a practical matter, there is no benefit to first filing a Rule 224 petition where petitioner believes he knows the identity of anyone who many lead him to the party responsible for his injury. To that end, a party may file suit against a tangentially connected person or entity and use section 2-402 to ascertain the identity of the proper defendant. Thus, by naming a single party as a defendant a plaintiff may name additional parties as respondents in discovery, and require them to respond to subpoenas regarding the identity of the anonymous speaker, based solely on probable cause. By requiring *prima facie* evidence, as opposed to probable cause, the majority provides an incentive to continue the practice our supreme court discouraged in *Bogseth* of "naming everyone in sight as a defendant." *Bogseth*, 166 Ill. 2d at 514.

¶ 57      In cases such as this one, Stone could have filed suit against Paddock, instead of the Rule 224 petition, and through section 2-402 obtained the identity of Doe, merely by showing probable cause that Comcast and Yahoo had information regarding who should properly be named as an additional defendant. Such a suit, once filed, would eliminate the injured party's risk of the statute of limitations lapsing, which, as described above, may be incentive enough to file the suit and learn the necessary details through discovery. Such conduct would not be barred by *res judicata* or collateral estoppel, if done after the denial of a petition because a Rule 224 denial is not a final judgment on the merits of petitioner's claim. *Agolf, LLC v. Village of Arlington Heights*, 409 Ill. App. 3d 211, 218 (2011); *Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102, 1109 (2011). Thus, the majority's holding encourages unnecessary litigation because it requires the same level of proof as a civil complaint without abating the risk of meritorious claims lapsing.

¶ 58                          Failure to Protect Anonymous Speech

¶ 59      As exhibited above, the *prima facie* standard can be circumvented in cases of anonymous public speech simply by filing suit against the publisher of said speech and ascertaining the identity of the speaker by way of the probable cause standard of section 2-402. Thus, the majority's holding does not strike a balance between the interests of the anonymous speaker and the injured party. Instead, the same types of abusive tactics used for ascertaining a party's identity, which the majority purports to protect against, remain available. Moreover, the same means of discouraging abuse exists, namely, sanctions pursuant to Illinois Supreme Court Rule 219 (eff. July 1, 2002). Thus, the majority's standard fails to provide any additional protection to anonymous speakers beyond that of the probable cause standard.

¶ 60      To the contrary, the increased likelihood of formal litigation the *prima facie* standard creates, when combined with no additional protections for anonymous speakers, shows an increased risk that an anonymous speaker will be identified. Under these circumstances, I cannot agree that the *prima facie* standard strikes a proper balance between the aforementioned interests, where it frustrates the interests of a party seeking redress through Rule 224, while providing no increased protection from the abusive litigation process for the anonymous speaker. Even in this case, the majority's standard does not protect Doe's anonymity, because Stone is not precluded from filing suit against Paddock and seeking Doe's identity through the lesser probable cause standard, by way of section 2-402.

¶ 61      I reject the majority's standard because it contravenes the purpose of Rule 224, creates an undue burden on the injured, and increases the likelihood of unnecessary litigation, without achieving the majority's purported goal of protecting anonymous speech. I specially concur, however, because the facts before us do not establish probable cause that petitioner's minor son was defamed. Accordingly, under either standard petitioner failed to meet her burden and the petition should be denied.